735 A.2d 1240

**BOROUGH OF LEWISTOWN, Appellee,**

**v.**

**PENNSYLVANIA LABOR RELATIONS BOARD and Lewistown Police Association, Intervenor.**

**Appeal of Pennsylvania Labor Relations Board (At No. 179 M.D. Appeal Dkt.1996).**

**Appeal of Lewistown Police Association, Intervenor (At No. 180 M.D. Appeal Dkt.1996).**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1997.

Decided Aug. 4, 1999.

James L. Crawford, Peter Lassi, Harrisburg, for Pa. Labor Relations Bd.

Vincent Candiello, Harrisburg, Robert J. Haurin, Philadelphia, for Lewistown Borough.

Stephen S. Snook, Lewistown, for Mifflin County Regional Police Dept.

Anthony C. Busillo for Lewistown Police Ass'n.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

*OPINION*

CAPPY, Justice.

With increasing frequency, boroughs, townships and other political subdivisions across our Commonwealth are banding together to provide police services through the formation of regional police departments. This case presents the issue of whether a borough, which forms a regional police department with two townships, commits an unfair labor practice by refusing to abide by an Act 111[1] interest arbitration award which was not appealed, where the award relates to the borough's police pension fund. For the reasons that follow, we reverse the order of the Commonwealth Court.

The facts underlying this issue are as follows. On June 30, 1993, Lewistown Borough (the "Borough") entered into an Intermunicipal Agreement (the "Agreement") with Derry and Bratton Townships (the "Townships")(the Borough and the Townships shall be collectively referred to as the "municipalities") to form the Mifflin County Regional Police Department (the "RPD"). The Agreement was reached pursuant to the Intergovernmental Cooperation Act[2] and was approved by the three municipalities through the enactment of ordinances in July 1993.

The Agreement provides that the RPD is under the direction and control of a board of directors. The board consists of two representatives from each municipality who are appointed by the governing body of the municipality. In the Agreement, the municipalities delegated to the RPD board all the functions, powers and responsibilities which the municipalities respectively have with respect to the operation, management, and administration of a municipal police department or a municipal police force, including all the functions, powers

1. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

2. Act of July 12, 1972, P.L. 762, No. 180, *as amended,* 53 P.S. §§ 481–490, repealed, Act of December 19, 1996, P.L. 1158, No. 177, 53 Pa.C.S.A. §§ 2301–2315.

and responsibilities the municipalities had with respect to collective bargaining and a police pension plan.[3] Agreement section 5.2(f)(h), R.R. 114a, 115a.

The municipalities also delegated to the RPD board the power to hire, supervise, discipline and discharge police officers, and the power to determine and fix wages, benefits and terms and conditions of employment, including the duties and responsibilities of the police officers. Agreement section 5.4(a), 5.5(f)(g), R.R.115a, 117a. Pursuant to the Agreement, the municipalities are responsible for all of the RPD's expenses, including wages and benefits for police officers. Agreement sections 7 and 8, R.R. 119a–125a. The RPD began operations on August 27, 1993.

The Lewistown Police Association (the "Association") is the collective bargaining representative of the RPD's police officers. Prior to the formation of the RPD, the Association was the representative of the police officers employed by Lewistown Borough and Derry Township. Bratton Township did not employ police officers prior to the formation of the RPD. The collective bargaining agreements covering these police officers expired on December 31, 1993. The RPD and the Association proceeded to binding interest arbitration pursuant to Act 111 when the parties were unable to agree to the terms of a new labor agreement and negotiations reached impasse. Among the issues for resolution was the determination of pension benefits for the RPD's police officers.

On January 10, 1994, an award was issued by the three member arbitration panel, which required, *inter alia,* that the Borough and Derry Township consolidate their pension plans

---

3. Specifically, the municipalities delegated to the board of directors,

[A]ll the functions, powers and responsibilities which the Municipalities respectively have with respect to the operation, management, and administration of a municipal police department or a municipal police force:

(f) under the Police Pension Act [Act of May 29, 1956, P.L. (1955) 1804, *as amended,* 53 P.S. § 767 *et seq.*] in connection with the establishment, regulation, benefits determination, funding, and administration of a police pension plan for police officers of the Department;

(h) under the Act for Collective Bargaining by Police [Act 111 of June 24, 1968, 43 P.S. § 217.1 *et seq.*].

by remitting all pension monies to the RPD for the purpose of effectuating a pension plan. Further, the award required that employee contributions be returned to the employees before the plans were consolidated and that municipal contributions by the Borough and Derry Township be distributed to the RPD. The award also required that the consolidated pension plan provide a retirement benefit of 70% of final average salary upon attainment of age 50, with 25 years of service.

A copy of the arbitration award was sent to the Borough on January 13, 1994. The RPD's board of directors voted unanimously to implement the arbitration award. Thus, no direct appeal was ever taken from the arbitration award.

Subsequently, Officer Robert Rarick of the RPD sought to retire. Officer Rarick had been employed by the Borough until August 27, 1993, when he became a RPD police officer. In responding to Officer Rarick's request to retire, the RPD advised Officer Rarick that it was unable to provide the pension benefits granted by the arbitration award because, unlike Derry Township, the Borough refused to distribute its pension funds to the RPD. The Borough took the position that the arbitration award was in violation of the Police Pension Act ("Act 600").[4] Thus, the RPD was unable to establish a consolidated pension fund in accord with the interest arbitration award.

On March 9, 1994, the Association filed an unfair labor practice charge with the Pennsylvania Labor Relations Board (the "PLRB"). The charge alleged that the RPD and the Borough failed to comply with the interest arbitration award which constituted an interference with employee rights and a refusal to bargain in good faith in violation of Section 6(1)(a) and (e) of the Pennsylvania Labor Relations Act (the "PLRA")[5, 6] and Act 111.

4. Act of May 29, 1956, P.L. (1955) 1804, *as amended*, 53 P.S. §§ 767–778.

5. Act of June 1, 1937, P.L. 1168, No. 294, *as amended*, 43 P.S. §§ 211.1–211.13.

6. Section 6(1)(a) and (e) of the PLRA, 43 P.S. § 211.6(1)(a) and (e), provide as follows:

On March 24, 1994, the PLRB issued a complaint against the RPD and the Borough. A PLRB hearing examiner conducted a hearing on June 7, 1994. By proposed decision and order dated December 20, 1994, the hearing examiner concluded, *inter alia,* that the RPD and the Borough engaged in unfair labor practices by failing to comply with the interest arbitration award.

On January 3, 1995, the Borough filed with the PLRB timely exceptions to the hearing examiner's proposed decision. In a final order entered May 30, 1995, the PLRB sustained the exceptions in part, dismissed the exceptions in part, and modified the hearing examiner's finding of unfair labor practices. Specifically, the PLRB vacated the hearing examiner's conclusion that the RPD was a public employer for purposes of Act 111. The PLRB noted that to be a public employer for purposes of Act 111, the employer must be a "political subdivision of the Commonwealth" or the "Commonwealth." 43 P.S. § 217.1. The PLRB found that the RPD is not a "political subdivision of the Commonwealth" or the "Commonwealth" for purposes of Act 111. Thus, the PLRB determined that the RPD was not a public employer in and of itself for purposes of Act 111. However, the PLRB concluded that the Borough and the Townships, which are political subdivisions of the Commonwealth, jointly controlled the RPD, and thus, through their designated representatives on the RPD board, the Borough and Townships jointly exercised the powers that demonstrated an employer-employee relationship. Thus, the PLRB found that the Borough and the Townships, acting by and through the RPD, are employers of the RPD police officers.

Having found the Borough to be a joint employer of the police officers, the PLRB concluded that since the arbitration award at issue was not appealed, and the appeal period expired, then the award was final and binding and not subject

(1) It shall be an unfair labor practice for an employer—
(a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.
. . .
(e) To refuse to bargain collectively with the representatives of his employes, subject to the provisions of section seven (a) of this act.

to collateral attack in an unfair labor practices proceeding. Thus, the PLRB affirmed that the Borough committed an unfair labor practice by refusing to comply with the arbitration award. The Borough appealed to the Commonwealth Court.

█ The Commonwealth Court reversed the decision of the PLRB. The Commonwealth Court concluded that because the Borough, as trustee of the Borough's police pension fund, was not a party to the interest arbitration proceedings and did not participate in those proceedings, the provisions of the award relating to the pension fund could not be binding on the Borough. Thus, the Borough did not commit an unfair labor practice by refusing to comply with the arbitration award. This court granted the PLRB's and the Association's petitions for allowance of appeal.[7]

█ The PLRB and the Association argue that the lower court erred in finding that because the Borough was not a party to the arbitration award and did not participate in the arbitration proceedings, that the provisions of the arbitration award relating to the Borough's pension fund cannot be binding on the Borough. Thus, we must determine whether the Borough was a party to, or participated in, the interest arbitration proceedings. Intertwined with this inquiry is the critical issue of whether the Borough is a joint employer of the RPD's police officers for purposes of Act 111.

This court has determined that the relation of employer and employee exists when a party has the right to select the employee, the power to discharge him, and the right to direct both the work to be done and the manner in which such work shall be done. *Sweet v. Pennsylvania Labor Relations Board, County of Washington,* 457 Pa. 456, 322 A.2d 362 (1974).

7. Our standard of review of the final order of the PLRB is limited to determining whether the adjudication is in violation of the constitutional rights of the appellant, is not in accordance with law, is in violation of the practice and procedure of the Commonwealth agency, or whether any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. 2 Pa.C.S. § 704; *Fraternal Order of Police v. PLRB,* 557 Pa. 586, 735 A.2d 96 (1999).

However, a joint employer relationship may exist where no single entity controls all of the terms of the employment relationship, and, thus, such entities are jointly deemed to be employers for purposes of the law. *Costigan v. Philadelphia Finance Department Employees Local 696, et al.*, 462 Pa. 425, 341 A.2d 456 (1975).

The PLRB and the Association contend that the Borough and the Townships jointly employ the police officers and exercise the powers that demonstrate an employer-employee relationship through their designated representatives on the RPD board. Specifically, the PLRB and the Association submit that the governance of the RPD through its board of directors as well as the powers delegated to the RPD board by the Borough evince this joint employer relationship. We agree.

Pursuant to the Agreement, the RPD is under the direction and control of its board of directors, which is the governing body of the RPD. Indeed, section 5.1 of the Agreement makes clear that all functions, powers, responsibilities and duties delegated to the RPD are vested in and assumed by the board. Each municipality has equal representation on the board of directors as the board consists of two directors from each municipality. The governing body of each municipality appoints the municipality's two directors. Agreement section 4.1, Appendix BL section 1.2, 1.3, R.R. 133 a. Two members of the Borough's council serve as the Borough's directors on the six-member board. Thus, the board is the appointed representative of the municipalities.

Further, the municipalities delegated to the board the power to hire, discharge and discipline. The board is empowered to determine and fix salaries, wages, pay, and other compensation of RPD employees, the benefits of RPD employees, and the terms and conditions of employment for RPD employees. Agreement section 5.5(f), R.R. 117a. The board is granted the power to establish police officer ranks and to prescribe duties, responsibilities and scope of authority carried by a rank and to establish the chain of command. Agreement section 5.5(g), R.R. 117a. Further the board is granted the power to settle

or compromise, upon the terms and conditions as the board may determine, any claims by the RPD or any claims against the RPD, its employees, its directors, or its officers. Agreement section 5.5(m), R.R. 118a.

Importantly, in creating the RPD, the Borough and the Townships expressly agreed to joint representation by the RPD in collective bargaining with their police officers. Agreement section 5.2(h), R.R. 115a. Of course, the collective bargaining process under Act 111 includes binding interest arbitration where impasse is reached in negotiations. Equally as important, in the Agreement creating the RPD, the Borough and the Townships expressly delegated to the RPD board all the functions, powers and responsibilities they had with respect to Act 600 in connection with the establishment, regulation, benefits determination, funding and administration of a police pension plan for the police officers of the RPD. Agreement section 5.2(f), R.R.114a. Thus, the municipalities have delegated to the RPD board all employment relation functions regarding the RPD.

We believe that based upon the municipalities' direct governance of the RPD board and based upon the municipalities' delegation of power to the board relating to all aspects of the employment relationship with the RPD police officers, that the municipalities are joint employers that act through their designated representatives on the RPD board for purposes of Act 111.

Our determination that the Borough is a joint employer is supported by the paradoxical situation that would occur if we were to find otherwise. Specifically, the PLRB determined in its order, that the RPD is not a "political subdivision" within the meaning of Act 111. If the Borough, as a political subdivision, is not considered to be a joint employer, then, the officers would not be employed by a "political subdivision" as required for applicability of Act 111. Thus, the RPD police officers would not be covered by Act 111. This would lead to the anomalous situation in which police officers employed by regional police departments would not be covered by Act 111 but officers directly employed by boroughs and townships

would be covered by Act 111. This absurd result is obviously contrary to the intent of the legislature in enacting Act 111.[8]

■ Turning to whether the Borough participated in the arbitration proceedings, we believe, for reasons similar to those stated above, that the Borough, as a joint employer, did participate in the interest arbitration proceedings through its representatives on the RPD board. Again, the municipalities appoint their representatives to the RPD board. The RPD board is the governing body of the RPD and is granted all powers with respect to the employer-employee relationship, expressly including all powers with respect to collective bargaining under Act 111. Thus, the RPD board serves as a conduit or a representative of the municipalities with respect to employment relations. Here, the RPD fully participated in the Act 111 interest arbitration proceedings. Indeed, the issue of the award's legality was raised before the arbitration panel. The RPD consistently took the position that the award of any benefits outside of Act 600 was not permissible. In fact, the arbitrator chosen by the RPD dissented from that part of the 2–1 arbitration award which granted a calculation of benefits at 70% of an officer's final average salary and the return of contributions made by the officers as being contrary

8. Excluding regional police officers from coverage by Act 111 would adversely impact these police officers. As the PLRB notes, if not covered by Act 111, the officers employed by the regional police department would necessarily be covered by the Public Employe Relations Act, 43 P.S. §§ 1101.101–1101.2301 ("PERA"). Under the PERA, these officers would have the right to strike, a situation certainly not intended by the legislature in crafting Act 111, which denies police officers the right to strike in return for binding arbitration. However, the right to strike under the PERA would be seemingly illusory because the PERA authorizes enjoining strikes that create a "clear and present danger or threat to the health, safety or welfare of the public." 43 P.S. § 1101.1003. With respect to striking police officers, it would be difficult to see how this standard would not be met. However, unlike Act 111 where the absence of the right to strike is offset with the promise of binding arbitration, under the PERA, the officers would lack any meaningful right to strike and would be deprived of the right to compel their employer to submit bargaining impasses to binding arbitration. Thus, if the Borough is not deemed to be a joint employer, regional officers will either have the right to strike or be deprived of both a meaningful right to strike and the quid pro quo for relinquishing strike rights, binding interest arbitration.

to Act 600. Arbitration Award, R.R. 143a. That being the case, we believe that the Borough, through its representatives who served on the RPD board, clearly participated in the interest arbitration proceedings.

In conclusion we hold that when a political subdivision controls a regional police department through board representation and when the political subdivision grants to the regional police department powers that exemplify the employer-employee relationship, the political subdivision is a joint employer for purposes of Act 111. Additionally, as a joint employer which engages in employment determinations through a regional police department, we find that such a political subdivision is deemed to participate in arbitration proceedings in which the regional police department is involved.

■ Having found the Borough to be a joint employer that participated in the arbitration proceedings, we must determine what impact this determination has on the finding of an unfair labor practice and the enforceability of the interest arbitration award. This court has made clear that when a party fails to appeal an arbitration award, the party waives the right to contest the illegality of the arbitration award in an unfair labor practice proceeding regarding enforcement of the arbitration award. *Pennsylvania Labor Relations Board v. Commonwealth of Pennsylvania,* 478 Pa. 582, 387 A.2d 475 (1978); *Derry Township v. Pennsylvania Labor Relations Board,* 131 Pa.Cmwlth. 574, 571 A.2d 513 (1989). *Accord Polarkoff v. Town Council of Borough of Aliquippa,* 39 Pa.Cmwlth. 604, 396 A.2d 75 (1979).

■ As explained by this court, allowing the party aggrieved by the arbitrator's decision to refuse to abide by that decision encourages the aggrieved party to ignore the normal appeal procedure, knowing that a subsequent enforcement proceeding will provide a second opportunity to litigate the validity of the award. This undercuts strong policies favoring the effectiveness of the arbitration process, finality and judicial economy. Thus, in an unfair labor practice proceeding regarding charges of refusal to comply with an arbitration

award, the PLRB must determine if the award exists, if the appeal procedure has been exhausted, and if the party has failed to comply with the arbitrator's decision. Once the appeal procedure has been completed, whether by direct appeal or by expiration of the time period to appeal without action, the award is considered to be final and binding. *Pennsylvania Labor Relations Board v. Commonwealth of Pennsylvania* 478 Pa. at 590–91, 387 A.2d at 479.

In the case *sub judice,* the Borough, through the RPD board, failed to appeal the arbitration award and failed to comply with the arbitrators' decision. As the Borough failed to appeal the arbitration award, it has waived its right to raise the legality of the arbitration award as a defense to the unfair labor practice charges. Prohibited from raising the legality of the arbitration award, the award is final and binding on the Borough.

The Commonwealth Court determined that the Borough was not a party to, and did not participate in, the underlying interest arbitration proceedings, and thus, was not bound by the arbitration award. Specifically, the Commonwealth Court found that the Borough did not delegate its fiduciary powers and responsibilities as trustee of the Borough pension fund to the RPD. The court noted that section 742.5 of the Borough's pension fund, such fund being created pursuant to Act 600, states that the Borough may not delegate to others the responsibility for the funding, solvency, administration, investment and actuarial soundness of the fund. Also, the Commonwealth Court found that pursuant to the Agreement, the Borough only granted the RPD limited powers to establish a new pension plan for the RPD's police officers. Thus, the Commonwealth Court concluded that despite its retention of control over the Borough pension fund as its trustee, the Borough did not participate in the interest arbitration proceedings. As a result, the Borough could not be bound by the provisions of the arbitration award that related to the Borough's pension fund.

We disagree with the Commonwealth Court's determination in this matter. The Commonwealth Court's determination

that the arbitration award is not binding on the Borough consists of two related concepts. There is a procedural issue of the Borough's participation in the arbitration proceedings and a substantive issue of whether or not the Borough could, or did, delegate to the RPD its functions, powers and responsibilities with respect to the Borough pension fund.

Regarding the issue of whether the Borough participated in the arbitration proceeding, as discussed in detail above, we find that the Borough, through its representatives, did participate in the arbitration proceedings. Thus, as the Borough participated in the proceedings, the foundation of the Commonwealth Court's conclusion that the arbitration award is not binding on the Borough is now absent.

As to the issue of whether the Borough could delegate, or did delegate, its powers regarding the Borough pension fund, we believe that the Borough was prohibited from raising this issue because it was waived. The delegation issue is whether the Borough agreed to delegate its pension fund responsibilities to the RPD or whether it is permitted to do so under Act 600 or the terms of the pension fund. It is, in essence, an examination of the legality of the arbitration award regarding consolidation of the pension plans. However, issues regarding the legality of the award were raised, or could have been raised, in the arbitration proceeding or in a direct appeal of that award. Again as discussed above in greater detail, as the arbitration award was not appealed, the Borough cannot now, in an unfair labor practice proceeding raise issues of the legality of the award.

Although the issues of the legality of the award are now waived, with respect to consolidation of the pension plans, we do note that the Borough's police pension fund was created pursuant to Act 600. The Commonwealth Court concluded that delegation of the Borough's responsibilities, as trustee of the trust, was impermissible under the Borough pension fund. However, subsequent to the issuance of the Commonwealth Court's opinion, Act 600 has been amended to address the impact of the formation of regional police departments on police officer pensions. The amendments clearly allow consol-

idation of police pension funds of the political subdivisions that form regional departments and require that police officers who continue with a regional police department receive credit for time spent as a member of the political subdivision's pension fund. These concepts of consolidation and credit for previous service are certainly contrary to the Commonwealth Court's notion of the Borough's duty as a trustee and the Borough being permitted to keep its pension fund separate from that of the RPD plan. 53 P.S. § 770.[9]

For the above stated reasons, we reject the Commonwealth Court's conclusion that, as trustee of the Borough's pension fund, the Borough did not participate in the arbitration proceedings and is not bound by the arbitration award. On the contrary, we believe that the Borough jointly participated in the interest arbitration proceedings, albeit through its representatives on the RPD board, and that the award is final and binding.

In conclusion, we hold that a political subdivision that jointly employs police officers through the formation of a regional police department is precluded from asserting in an unfair labor practice proceeding the illegality of an interest arbitration award from which no appeal is taken. The Commonwealth Court's decision is hereby reversed and the order of the Board requiring compliance with the arbitration award is reinstated.[10]

9. 53 P.S. § 770 states in relevant part:
(d) Whenever two or more boroughs, cities, towns or townships establish a regional police department through an intermunicipal agreement ... the participating boroughs, cities, towns or townships shall individually adopt ordinances establishing the regional police pension fund which shall have a uniform benefit structure consistent with this act. Any member of the police force of any boroughs, cities, towns or townships establishing the regional police department who is appointed as a member of the regional police force within six months of its establishment shall have credited to his employment record for pension or retirement benefit purposes all of the time spent by him as a full-time member of the police pension fund of the municipality.

10. As the legality of the arbitration award cannot be argued in the unfair labor practice proceeding, there is no need to address the underlying issue of whether the award violates Act 600.

Justice NEWMAN did not participate in the consideration or decision of this matter.