**TEAMSTERS LOCAL 77 & 250, Petitioners,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 6, 2001.

Decided Nov. 1, 2001.

---

Kenneth S. Hall, Norristown, for petitioner.

No appearance entered for respondent.

Marvin L. Weinberg, Philadelphia, for intervenor, PA Turnpike Commission.

Before DOYLE, President Judge, KELLEY, J., and FLAHERTY, Senior Judge.

KELLEY, Judge.

Teamsters Local 77 and 250 (Unions) appeal from an order of the Pennsylvania Labor Relations Board (Board) that finalized a hearing officer's proposed decision and order (PDO), and dismissed the Unions' exceptions thereto. The PDO concluded that Intervenor Pennsylvania Turnpike Commission (Commission) did not commit unfair labor practices by eliminating a field clerk program, and by failing to impact bargain with the Unions. We affirm.

The Commission created a field clerk program (Program) in 1984, to provide light-duty positions to injured employees receiving workers' compensation benefits. At its inception, the Commission and its employees' certified bargaining representative, the Unions, negotiated an agreement establishing the terms and conditions of employment within the Program.

On September 9, 1998, the Commission notified the Unions that the Commission had decided to eliminate the Program, and further instructed the Unions to direct any questions concerning individual employees to Ms. Patricia Raskauskas, the Commission's workers' compensation administrator. The Commission stated that Program positions currently held by employees that were injured on or before June 24, 1996 would be eliminated as of November 1, 1998, and that the employees holding those positions would be reinstated to temporary total disability status with a corresponding increase in workers' compensation benefits. All positions filled by employees with injury dates prior to June 24, 1996 would be abolished as those positions became vacant.

On October 20, 1998, the Unions filed a charge of unfair labor practices with the Board, alleging that the Commission had committed unfair practices within the meaning of Sections 1201(a)(1) and 1201(a)(5) of the Public Employe Relations Act (PERA)[1] by advising the Unions that the Commission intended to abolish the Program.

On December 17, 1998, the Board informed the Unions that no complaint would be issued on the charge because, pursuant to Board precedent, the Program was a light duty policy, and its elimination was a managerial prerogative and therefore not a mandatory subject of collective bargaining. On December 31, 1998, the Unions filed exceptions alleging error in the application of the cited Board precedent to the facts of the instant case.

On January 4, 1999, the Unions filed a second unfair practices charge alleging unfair practices by the Commission under Sections 1201(a)(1) and 1201(a)(5), due to the Commission's elimination of the Program and its refusal to bargain over the impact of that elimination.

On January 20, 1999, the Board issued an order remanding to its secretary for further proceedings on the Unions' first charge, and specifically directing the secretary to issue a complaint on that charge.

On January 28, 1999 the Board issued a complaint and notice of hearing in each of the two cases enumerated above. On February 12, 1999 the Commission filed an answer in each case denying the respective unfair practice charges. The two cases were subsequently consolidated, and hearings were held before a hearing officer.

On July 19, 1999 the hearing officer issued a PDO concluding that the Commission did not commit unfair practices in eliminating the Program, and did not commit unfair practices in failing to bargain over the impact of the Program's elimination. The PDO dismissed the charges and rescinded the complaints. The Unions filed timely exceptions to the PDO, and the Commission filed its response to those exceptions. The Board dismissed the Unions' exceptions in its decision and final order, and finalized the PDO, on October 19, 1999. The Unions now petition this Court for review.

■ This Court's scope of review of the Board's final order is limited to determining whether constitutional rights were violated, whether the Board's decision was supported by substantial evidence, and whether the Board committed an error of law. *Borough of Lewistown v. Pennsylvania Labor Relations Board*, 558 Pa. 141, 735 A.2d 1240 (1999).

The Unions present four issues for review: 1. Whether the Board erred in concluding that a memorandum of understanding gave the Commission unilateral authority to eliminate the Program; 2. Whether the Board erred in concluding that the Commission's elimination of the Program is a managerial prerogative under PERA; 3. Whether the Board erred in concluding that, under the 1996 amendments to the Workers' Compensation Act, the Program is not a mandatory subject of

---

1. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.1201. The relevant sections read:

Section 1201. (a) Public employers, their agents or representatives are prohibited from:
(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this Act.

* * *

(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

bargaining, and; 4. Whether the Board erred in concluding that the Unions waived their claim to impact bargaining.

■ The Unions first argue that the Board erred in relying on a memorandum of understanding, entered into by the Commission and the Unions, as authority for the Commission's elimination of the Program. The Unions contend that the Board's reliance on the memorandum is evidenced by the following language in the Board's final order:

> Pursuant to Memoranda of Understanding between the parties that filling or vacating field clerk positions shall be at the sole discretion of the Commission, the Commission notified the Unions that the position was prospectively eliminated as of September 1, 1998.

Reproduced Record (R.R.) at 79a. The Unions argue that the preamble of that memorandum references the "program" as a whole, and should be read together with the first paragraph of the memorandum which references "position[s]" in regards to the Commission's removal power. R.R. at 191a. The Unions assert that reading those two provisions together clearly shows that the memorandum gave the Commission authority only over individual employees in the Program, and did not grant the Commission power to eliminate the Program as a whole. We disagree with the Unions' contention that such reliance is present.

The language seized upon by the Unions for this argument comes solely from the first page of the Board's final order, wherein the Board is merely summarizing the factual history of the case. R.R. at 79a–80a. The analysis of the issues before the Board appears thereafter on pages 2–4 of the final order, and nowhere in this analysis does the Board rely on any alleged negotiated right to eliminate the Program set forth in the memorandum.

R.R. at 80a–82a. The Board's final order relies on the inherent managerial right of the Commission to discontinue the Program. The Board did not base its decision, either impliedly or expressly, on the memorandum of understanding between the parties.

■ The Unions next argument is that the Board erred in concluding that the Commission's elimination of the Program was a managerial prerogative under PERA.

Sections 701 and 702 of PERA articulate generally what matters are mandatorily negotiable, and what matters are those of inherent managerial policy and therefore not the subject of mandatory bargaining. Section 701 defines the mandatory subjects of bargaining as "wages, hours and other terms and conditions of employment . . ." 43 P.S. § 1101.701. Section 702 states, in relevant part:

> Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel . . .

43 P.S. § 1101.702.

In the instant matter, the Board relied in part upon its prior decision in *Shillington Borough Police Officers Association v. Shillington Borough*, 22 Pa. Pub. Employee R. ¶ 22074 (PLRB March 27, 1991). The Unions argue that this reliance constitutes reversible error because the facts of *Shillington Borough* are distinguishable from the instant case in that *Shillington Borough* dealt with the creation of a light-duty program for one employee, while the case at hand centers around the elimina-

tion of a light-duty program affecting at least 31 employees.

■ Our review reveals that *Shillington Borough, County of Bucks v. Pennsylvania Labor Relations Board,* and multiple prior opinions of both this Court and the Board are persuasive and controlling, as noted by the Board. As we have emphasized in the past, the Board possesses administrative expertise in the area of public labor relations, and therefore its decisions are entitled to a measure of deference from this Court. *American Federation of State, County and Municipal Employees v. Pennsylvania Labor Relations Board,* 150 Pa.Cmwlth. 642, 616 A.2d 135 (1992).

While the number of employees affected in *Shillington Borough* does distinguish that case from the instant one, *Shillington Borough* remains persuasive in its articulation of the Board's consistent recognition that the creation of a light duty program is an exercise of managerial prerogative, and therefore is not subject to mandatory bargaining. In *Shillington Borough,* the Board concluded that the creation of the light-duty program at issue "was within the discretion of management and not a mandatory subject of bargaining." 22 PA. PUB. EMPLOYEE R. at 22074 (adopting and finalizing the language of the PDO). Thereafter, the Board again concluded that an employer's unilateral decision to assign a light duty position to an employee was within the employer's managerial prerogative, and was therefore not subject to mandatory bargaining. *Bern Township Police Association v. Bern Township,* 30 Pa. Pub. Employee R. ¶ 30061 (PLRB March 16, 1999). The cited Board precedents unarguably establish that the Board views the creation of a light duty program or position to be an exercise of inherent managerial prerogative, notwithstanding any factual differences to the case *sub judice.*

In *County of Bucks v. Pennsylvania Labor Relations Board,* 77 Pa.Cmwlth. 259, 465 A.2d 731 (1983), this Court adopted the principle that a public employer could exercise its managerial prerogative to eliminate a service affecting multiple union members as long as the cessation was complete and permanent. In that case, we held that Bucks County's termination of its park ranger program would not be an unfair labor practice in the presence of a finding of the permanence of the termination upon remand. *Accord Midland Borough School District v. Pennsylvania Labor Relations Board,* 126 Pa. Cmwlth. 537, 560 A.2d 303 (1989), *petition for allowance of appeal denied,* 525 Pa. 651, 581 A.2d 576 (1990) (managerial prerogative and economic issues are often intertwined; however, where employer failed to permanently cease providing school services, it was required to bargain with the employee representative).

In the case *sub judice,* it is without dispute that the Commission eliminated every light duty position in the Program, and that those positions would not be filled again. R.R. at 195a–196a. The Commission has, therefore, eliminated the Program completely and permanently.

Although this Court has never directly addressed the issue of whether the elimination of a light duty program is an inherent managerial prerogative under PERA, we have also consistently recognized that the creation of such a program is a managerial prerogative. In addition to our adoption of the "complete and permanent" principle, *County of Bucks* can also be read to inherently recognize the managerial prerogative of such a termination. *County of Bucks,* 465 A.2d at 734. Additionally, in *Lackawanna County Detectives' Association v. Pennsylvania Labor Relations Board,* 762 A.2d 792 (Pa. Cmwlth.2000), the creation of a light-duty

program was accepted as a managerial prerogative, and indirect bargaining thereon disallowed, where the allowance of impact bargaining sought by the affected union would have permitted the improper indirect bargaining of the exercise of management's prerogative.

We agree with the Board that since the Commission has the managerial discretion to create a light-duty position, it logically follows that it also has the concomitant right to eliminate that position without bargaining. We hold that the Commissions' termination of the Program was a matter of inherent managerial prerogative, and that its complete and total elimination thereof was not an unfair labor practice under PERA.

The Unions next argue that the Board's review of its holding in *Shillington Borough*, and its extension of that case's holding to the instant facts, constituted reversible error since the Board failed to apply the facts of the instant case to the balancing test required by *Pennsylvania Labor Relations Board v. State College School District*, 461 Pa. 494, 337 A.2d 262 (1975). The Unions also emphasize that *Shillington Borough* was not decided pursuant to PERA, which further distinguishes it from the case at issue.

In *State College*, our Supreme Court mandated the application of a balancing test to decide whether a particular matter is mandatorily negotiable under Section 701 of PERA, or whether it is a matter of inherent managerial policy under Section 702 of PERA. *State College* held:

> It is the duty of the Board in the first instance and the courts thereafter to determine whether the impact of the issue on the interest of the employe in

wages, hours and terms and conditions of employment outweighs its probable effect on the basic policy of the system as a whole.

*State College*, 461 Pa. at 507, 337 A.2d at 268.

■■■ *Shillington Borough*, however, was not decided under PERA, and therefore did not apply the *State College* test. *Shillington Borough* was decided pursuant to what is commonly referred to as the Collective Bargaining by Policemen or Firemen Act (Act 111).[2] Under Act 111's balancing test, as interpreted by this Court, to determine whether a matter was one of managerial prerogative and thus not subject to mandatory bargaining the employer's interest must *substantially outweigh* its impact on the employees' interests. *Delaware County Lodge No. 27 v. Pennsylvania Labor Relations Board*, 722 A.2d 1118 (Pa.Cmwlth.1998) (citations omitted). However, under PERA and the *State College* test, the matter need only have a *greater* impact on the employer's interest than on the employees' interests. As pointed out by the Board, it follows that if a matter is a managerial prerogative under Act 111, then it *a fortiori* is a managerial prerogative under PERA. Since the bargainability of light-duty programs was already decided under the stricter standard of Act 111, the Board did not err in concluding that it was logically a managerial prerogative under PERA.

We also reject the Unions' assertion that the Board did not apply the facts of the case *sub judice* to either balancing test, but rather simply cited *Shillington Borough* as controlling. Our review of the record reveals otherwise. The hearing officer, in his PDO, found and concluded:

**2.** Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10, also commonly referred to as Act 111.

On September 1, 1998, the Commission, acting on a staff recommendation based on changes to the Workers' Compensation Act and the desire to effectively manage the costs of workers' compensation, decided to abolish the field clerk position on a prospective basis.

* * *

Employes no longer eligible for the field clerk position lost the opportunity for additional pay and benefits while collecting workers' compensation.

* * *

[In *Shillington Borough*, the Board] reasoned that the creation of [a light duty] position "can well be viewed as creating a standard of service, a temporary reclassification, or a physical fitness standard", all of which are managerial prerogatives. The elimination of such a position relates to the same interests of the employer and likewise is a managerial prerogative.

* * *

[T]he fact remains that the Commission in making that decision implicated the same interests that the Board in *Shillington Borough* found to have substantially outweighed those of the employes.

R.R. at 66a–68a (citations omitted). Notwithstanding the hearing officer's, and the Board's, poor articulation of the required balancing of interests, the above-quoted language in combination with the hearing officer's and the Board's detailed analyses of *Shillington Borough* and *State College*, satisfies the required balancing of interests as analyzed above. Under PERA and *State College*, for a matter to be a managerial prerogative, its impact on the employer's interests must be greater than the impact on the employees' interests. In

this case, the Board concluded that the Commission's interests were greater than the employees' interests. R.R. at 80a. The Unions' argument on this point, therefore, fails.

■ The Unions next argue that the 1996 amendments to the Pennsylvania Workers' Compensation Act[3] (WCA) specifically provide for bargaining over the terms of a light-duty position, and indicate the fundamental nature of the elements of such a program as regards the employees' interest in wages and terms and conditions of employment. Section 450 of the WCA reads, in relevant part:

(a) Any employer and the recognized or certified and exclusive representative of its employe may agree by collective bargaining to establish certain binding obligations and procedures relating to workers' compensation: Provided, however, that the scope of the agreement shall be limited to:

* * *

(5) the creation of a light duty, modified job or return to work program;

(b) Nothing contained in this section shall in any manner affect the rights of an employer or its employes in the event that the parties to a collective bargaining agreement refuse or fail to reach agreement concerning the matters referred to in clause (a).

77 P.S. § 1000.6.[4] The Unions argue that the issues set forth in this section are mandatory subjects of bargaining under this Court's decision in *County of Delaware v. Pennsylvania Labor Relations Board*, 735 A.2d 131 (Pa.Cmwlth.1999), *petition for allowance of appeal denied*, 561 Pa. 679, 749 A.2d 473 (2000). In addressing Section 450(b), this Court stated that

---

**3.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

**4.** Added by the Act of June 24, 1996, P.L. 350.

"[w]hile this Section recognizes the right of either party to refuse to agree to the other's proposal, it does not recognize a right of a party to refuse to bargain altogether." *County of Delaware*, 735 A.2d at 134. The Unions assert that following this decision, the creation of a light duty-program such as the one at issue is a mandatory subject of bargaining under the WCA, and it follows logically that the elimination of such a program also must be a mandatory subject of bargaining. We disagree.

*County of Delaware* is factually distinguishable from the instant case. *County of Delaware* dealt with an employer's change in the length of time that an employee should be required to treat with a panel of physicians, and the instant case involves the elimination of a light-duty program that the Board previously found in *Shillington Borough* to be a managerial prerogative. *Accord Lackawanna County; County of Bucks.* While a change in medical treatment requirements is a mandatory subject of bargaining under the WCA as held in *County of Delaware*, that case did not address the creation or termination of a light duty program as a managerial prerogative. *County of Delaware* is thusly not persuasive under the instant facts and issue.

Further, the Unions' argument to present *County of Delaware* as inconsistent with the Board's order is not persuasive. The 1996 amendments to the WCA did not alter the bargaining obligation over health care benefits in *County of Delaware*, nor do they so alter the bargaining obligation over light-duty programs in the instant case. The 1996 amendments did not prohibit bargaining over health care benefits, and therefore the Board and this Court did not alter their positions on this issue in *County of Delaware*. Similarly, light-duty programs were matters of managerial prerogative prior to the 1996 amendments.

*Shillington Borough.* Because the 1996 amendments did not mandate collective bargaining over light-duty programs, the Board likewise did not alter its position on this issue. *Bern Township; Borough of Ambridge*, 30 Pa. Pub. Employee R. ¶ 30218 (PLRB October 19, 1999).

Additionally, the Unions' argument that the elimination of the Program establishes a bargaining obligation due to the loss of wages and benefits is flawed in that it refuses to acknowledge that the elimination of positions does not make an action bargainable, and that all of the precedents cited by both parties have had a similar profound impact on employees who lost their jobs. The Unions are unable to cite to any authority for this position, nor are they able to distinguish the Board or appellate authority that supports the fundamental employer right to make managerial prerogative decisions under Section 702 of PERA which result in the loss of jobs.

■ Finally, the Unions argue that the Board erred in concluding that the Unions had waived their claim to impact bargaining.

■ When a managerial decision has an impact on the terms and conditions of employment, the parties are required to engage in impact bargaining. *City of Philadelphia v. Pennsylvania Labor Relations Board*, 138 Pa.Cmwlth. 113, 588 A.2d 67 (1991), *petition for allowance of appeal denied*, 528 Pa. 632, 598 A.2d 285 (1991). This Court, in *Lackawanna County*, articulated four necessary elements to establish a public employer's refusal to impact bargain:

First, the employer must lawfully exercise its managerial prerogative. Second, there must be a demonstrable impact on wages, hours, or working conditions, matters that are severable from the managerial decision. Third, the union

must demand to negotiate these matters following management's implementation of its prerogative. Finally, the public employer must refuse the union's demand.

*Lackawanna County,* 762 A.2d at 794.

The parties do not dispute that the Unions did not make an impact bargaining demand prior to the filing of their complaint that initiated this case. The Unions contend that the very filing of their complaint, which alleged that the Commission failed to impact bargain, served as their demand to so bargain. We disagree.

The Unions assert that the language of the Commission's letter informing the Unions of the Commission's elimination of the Program requested that the Unions contact the Commission's workers' compensation administrator, Ms. Patricia Raskauska, to address the Commission's action in regards to individual employees. R.R. at 24a. This letter, the Unions argue, precluded the Unions from bargaining over the impact of the Commission's decision because Ms. Raskauska had no authority to bargain on behalf of the Commission. The Unions contend that the Commission's deliberate treatment of the matter as a strictly administrative situation constitutes an effective refusal to bargain.

The Unions assert that the filing of a complaint can serve as the Union's demand for impact bargaining pursuant to the Board's statement and actions in *Womelsdorf Police Association v. Womelsdorf Borough,* 28 Pa. Pub. Employee R. ¶ 28165, (PLRB June 10, 1997), in which the Board reviewed the charge of unfair labor practices filed in that case in order to determine whether an impact bargaining violation had been alleged. We cannot agree.

In *Womelsdorf Borough,* the Board dismissed the union's unfair practice charge because the union did not demand bargaining with the employer once the wage, hour and working condition impact of the managerial decision was known. As we read that Board precedent, the review of the complaint at issue conducted by the Board was not a search for an allegation of a failure of the employer to impact bargain, which would serve to demand the same under the Unions' reading, but rather a search for facts of record indicating that such a demand had been made previously by the union.

We do not agree that the filing of a charge alleging a failure to impact bargain can simultaneously serve as a demand for that bargaining. It defies all elementary rules of logic to allow a complaint to stand alleging a failure to respond to a demand, in the absence of some opportunity for the opposing party to respond in the wake of that demand.

The Unions' argument that the Commission precluded such a demand, by its direction within the September 9, 1998 letter for questions to be directed to Ms. Raskauskas, did not relieve the Unions of their duty to demand impact bargaining from the Commission. Absent such a demand, timely preceding the filing of a charge alleging the failure to bargain, we will not find an unfair practice for refusal to bargain.

The Board properly concluded, and we agree, that the Commission could not have refused to impact bargain unless and until the Unions requested impact bargaining, which they never did. In not timely requesting impact bargaining prior to filing their complaint, the Unions waived their claim.

Accordingly, we affirm.

Senior Judge FLAHERTY dissents.

## ORDER

AND NOW, this *1st* day of *November*, 2001, the order of the Pennsylvania Labor Relations Board dated October 19, 1999, at PERA–C–98–471–E and PERA–C–99–2–E, is affirmed.