# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny,                          :
                    Petitioner                :
                                              :
          v.                                  :     No. 617 C.D. 2023
                                              :     Argued:  May 23, 2024
Pennsylvania Labor Relations Board,           :
                    Respondent                :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge (P.)
           HONORABLE LORI A. DUMAS, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**                **FILED: August 8, 2024**


County of Allegheny (County) filed a petition for review (Petition) of a Final Order[1] of the Pennsylvania Labor Relations Board (Board), which sustained in part and dismissed in part exceptions filed by the Allegheny County Police Association (Union) to a Proposed Decision and Order by a Hearing Examiner. The Board made absolute and final the Hearing Examiner's Proposed Decision and Order dismissing the charge and rescinding the unfair labor practice complaint. The Board and Hearing Examiner concluded County did not commit an unfair labor practice by not engaging in mandatory collective bargaining with the Union before implementing a policy that required Union members to become vaccinated against COVID-19

---

[1] The Final Order can be found in the Reproduced Record at pages 422 through 430. The Court further notes the Reproduced Record does not comport with Pennsylvania Rule of Appellate Procedure 2173, Pa.R.A.P. 2173 (requiring that the pagination of reproduced records be in the form of an Arabic number followed by a small "a"). For ease, the Court will utilize the method of pagination used in the Reproduced Record.

(Vaccine Policy). While the Vaccine Policy was found to be within management's prerogative, the Board also stated it was a new form of discipline subject to impact bargaining. It is that statement that County challenges. The Board contends County was a prevailing party in that the unfair labor practice charge was dismissed and thus, it is not aggrieved by the Final Order. After review, we are constrained to conclude County does not have standing and, therefore, must dismiss County's appeal.

## I. BACKGROUND

In late 2020, County internally began discussing the need for a Vaccine Policy as the number of COVID-19 cases had spiked. (Proposed Decision and Order (Proposed Decision), Findings of Fact (FOF) ¶¶ 3-4.)[2] Based on information from County and State Departments of Health and the Centers for Disease Control, another spike in cases was expected due to COVID-19 variants, and County hoped vaccinations would help slow the spread and lessen the severity of the symptoms of those infected. (*Id.* ¶ 4.) Other mitigation efforts, such as masking, social distancing, and remote work, were utilized by County where possible, but for almost three-quarters of its workforce, including police officers, remote work was not a possibility, and masking and social distancing was not sufficient to curb the spread of COVID-19. (*Id.* ¶¶ 6, 22.) In addition, prior to implementation of the Vaccine Policy, County's police department encountered staffing and overtime issues due to employee absences caused by COVID-19. (*Id.* ¶ 23.) To keep its employees and the public with which they interact safe, County believed it needed to mandate

---

[2] The Hearing Examiner's Proposed Decision and Order can be found at page 181 of the Reproduced Record.

vaccines. (*Id.* ¶ 5.) County already required vaccination against COVID-19 for new employees. (*Id.* ¶ 7.)

On September 29, 2021, County announced plans to implement the Vaccine Policy, which would require all County's employees in the executive branch,[3] including its police officers who are members of the Union, to become fully vaccinated against COVID-19 by December 1, 2021, unless approved for an exemption.[4] (*Id.* ¶ 8.) Before announcing the Vaccine Policy, County did not bargain with the Union, though County's executive called each Union representative in advance to advise of County's plan. (*Id.* ¶ 9.) The Vaccine Policy was announced publicly through a press release and emailed to every employee. (*Id.* ¶¶ 8, 10-11.) In addition, letters were mailed on September 29, 2021 to employees for whom County did not yet have proof of vaccination. (*Id.* ¶ 13.) Another letter was mailed October 21, 2021, to those still not compliant with the Vaccine Policy. (*Id.* ¶ 15.) The press release, emails, and letters all stated that noncompliance would subject the employee to termination of employment. (*Id*. ¶¶ 8, 11, 13, 15.)

County's police department has approximately 217 employees, and approximately 70% of its police officers were vaccinated prior to the Vaccine Policy's promulgation. (*Id.* ¶¶ 20-21.) Two police officers were discharged for not complying with the Vaccine Policy by December 1, 2021, and two more were

---

[3] Approximately 5,000 of County's employees including police officers, corrections officers, other employees of the jail and police department, employees of Kane Senior Living Home, Facilities, and the Departments of Economic Development, Health, Law, and Human Services were impacted. (FOF ¶ 10.) A similar appeal involving the labor union representing County's corrections officers is docketed at 618 C.D. 2023 and was argued seriately with the present matter. *See County of Allegheny v. Pa. Lab. Rels. Bd.* (Pa. Cmwlth., No. 618 C.D. 2023, filed August 8, 2024).

[4] County received 215 requests for exemptions based on religious and/or medical reasons. (FOF ¶ 14.) While the review of those requests was still ongoing at the time of the second hearing in February 2022, no religious exemptions and one or two medical exemptions were granted. (*Id.*)

3

subsequently terminated after their requests for medical exemptions were denied. (*Id.* ¶ 20.) County's superintendent of police listed "disqualified due to vaccine mandate" as the reason for separation to the Pennsylvania State Police. (*Id.* ¶ 25.) The Union grieved the four discharges as violating the applicable disciplinary sections of the parties' collective bargaining agreement (CBA). (*Id.* ¶ 24.)

One day after the Vaccine Policy was announced, the Union filed an unfair labor practice charge asserting County violated Section 6(1)(a) and (e) of the Pennsylvania Labor Relations Act[5] (PLRA) by unilaterally imposing the Vaccine Policy without bargaining. (Reproduced Record (R.R.) at 3 ¶ 8.) The Board's Secretary issued a Complaint,[6] and a hearing was scheduled before a Hearing Examiner. (Proposed Decision at 1.) After multiple days of virtual testimony, and following post-hearing briefing by the parties, the Hearing Examiner issued a Proposed Decision and Order on September 7, 2022. Therein, the Hearing Examiner explained that under Section 1 of the Policemen and Firemen Collective Bargaining Act, also known as Act 111,[7] police unions have the right to bargain over the "terms

---

[5] Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. § 211.6(1)(a), (e). Section 6 of the PLRA states, in pertinent part,

> (1) It shall be an unfair labor practice for an employer--
>
> > (a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.
> >
> > * * * *
> >
> > (e) To refuse to bargain collectively with the representatives of his employes, subject to the provisions of Section [7](a) of this act[, 43 P.S. § 211.7(a)].

*Id.*

[6] *See* 34 Pa. Code § 95.81 ("The Secretary of the Board . . . will have authority to determine whether complaints will issue in unfair practice cases.").

[7] Act of June 24, 1968, P.L. 237, No. 111, 43 P.S. §217.1.

4

and conditions" of employment, which include "compensation, hours, working conditions, retirement, pensions and other benefits." (*Id.* at 15.) The Hearing Examiner further explained that while Act 111 did not define "working conditions," our Supreme Court in *Borough of Ellwood City v. Pennsylvania Labor Relations Board*, 998 A.2d 589, 600 (Pa. 2010), interpreted it as "those matters that bear a rational relationship to the employes['] duties, or, in other words, are germane to the working environment." (Proposed Decision at 15.) However, Pennsylvania courts, the Hearing Examiner reasoned, do not require bargaining over matters that constitute managerial prerogative, which are "fundamental to public policy or to the public enterprise's direction and functioning." (*Id.* (quoting *City of Philadelphia v. Int'l Ass'n of Firefighters, Loc. 22*, 999 A.2d 555, 570 (Pa. 2010)).) With those principles in mind, the Hearing Examiner determined that while the Vaccine Policy "touches topics that are working conditions" because it requires employees to undergo a medical procedure that might result in side effects, the Hearing Examiner declined to find it resulted in a new form of discipline. (Proposed Decision at 17.) Specifically, the Hearing Examiner reasoned:

> The Board has held that where the discipline for violating new work rules is already subsumed within the existing [CBA], there is no new discipline but there is a severable impact on employes that has to be bargained. . . . The record in this matter shows that [the Union] has not demanded impact bargaining on this issue.

(*Id.* (citations omitted).)

The Hearing Examiner found the record evidence established that the purpose of the Vaccine Policy was to protect the health and safety of County's workforce and the public with which it interacts and to ensure that it has adequate staffing levels to provide critical services. (*Id.* at 17-18.) While the former was "manifestly a subject related to [] working conditions," to the extent it was concerned with

5

employee health and safety, the Hearing Examiner found the latter concerns about the public were managerial prerogatives. (*Id.* at 18-19.) The Hearing Examiner concluded that requiring County to "collective[ly] bargain[] over the Vaccine Policy would unduly infringe on [] County's policy of ensuring that all employes were vaccinated by December 1, 2021." (*Id.* at 19.) This date was important, the Hearing Examiner explained, because another wave of infections was anticipated, the effects of which County hoped to ameliorate. (*Id.*) The Hearing Examiner continued:

> To subject the Vaccine Policy to collective bargaining would likely completely frustrate the timing of the Vaccine Policy. If the deadline to comply with the Vaccine Policy [was] delayed, I infer from the record that it would have been likely that some County employes, including County Police, would not have been vaccinated by December 1, 2021, which would have frustrated [] County's interest in protecting the health of its citizens and maintaining critical staffing and its standards of operation through the predicted and realized surge in COVID-19.

(*Id.* at 19-20.)

To the extent the Union argued that the vaccines were ineffective and therefore there would be no undue infringement on County's managerial rights, the Hearing Examiner determined "it is not [the Hearing Examiner's] place, nor the Board's, to judge the wisdom of a public employer's actions[,] and it is not the burden of County in this case to show the wisdom of its exercise of managerial policy to the satisfaction of the Union." (*Id.* at 21.)

Accordingly, the Hearing Examiner concluded that requiring bargaining over the Vaccine Policy would infringe on County's managerial responsibilities, that implementation of the Vaccine Policy was a proper exercise of County's managerial prerogative, and that no unfair labor practice occurred. (*Id.* at 21.)

6

The Union filed exceptions to the Proposed Decision and Order, challenging, *inter alia*, the Hearing Examiner's conclusion that the Vaccine Policy was a proper exercise of managerial prerogative and that the Vaccine Policy was not a new form of discipline. (R.R. at 212.) In reviewing the Hearing Examiner's decision, the Board found County's proffered reasons for implementing the Vaccine Policy—ensuring adequate staffing and protecting the health and safety of the public—were sufficient to establish that implementation of the Vaccine Policy was within County's managerial prerogative. (Final Order at 7 (citing *Amalgamated Transit Union, Div. 1279 v. Cambria Cnty. Trans. Auth.*, 21 PPER ¶ 21007 (Final Order 1989), 1989 WL 1701829).) In response to the Union's arguments about the vaccines' effectiveness, the Board stated it would "not delve into the wisdom of an employer policy once it has been determined to be a managerial prerogative." (*Id.*) In analyzing the Union's argument "that the Hearing Examiner erred in holding that the Vaccine Policy was not a new form of discipline because it exposes officers to potential discipline for conduct not previously chargeable, *i.e.* disqualification for failure to get a vaccine," the Board stated as follows:

> In this regard, the Board agrees and finds that this matter is akin to the situation presented in *Cambria County Transit Authority*. In that case, the Board held that, although the transit authority's drug and alcohol policy was a matter of inherent managerial prerogative, the policy created an entirely new ground for employe discipline, *i.e.*, discharge for failing to submit to a drug or alcohol test, which required bargaining over the disciplinary aspects of the policy.
>
> Similarly, the police officers were not previously subject to discipline for failure to receive a vaccine and, therefore, the Vaccine Policy's disciplinary consequences of refusing the COVID-19 vaccine **are an impact severable from the policy itself, and as such, subject to bargaining**. . . . However, an employer's obligation to bargain wages, hours and working conditions that are impacted or affected by, but severable from, the employer's implementation of a managerial

7

prerogative, arises only upon an employe representative's demand to bargain those issues. . . . Here, the record is devoid of any evidence to establish that the Union expressly requested impact bargaining, and thus, no unfair labor practice **has yet occurred**. Therefore, the Union's exception on this issue is sustained, in part, and denied, in part. Accordingly, **the Hearing Examiner's conclusion that the Vaccine Policy was not a new form of discipline is vacated.**

After a thorough review of the exceptions and all matters of record, the Hearing Examiner did not err in concluding that [] County's implementation of a mandatory COVID-19 Vaccine Policy did not violate Section 6(1)(a) or (e) of the PLRA.

(*Id*. at 7-8 (internal citations omitted) (emphasis added).) The Board then ordered "that the exceptions filed by the [Union] are hereby sustained, in part, and dismissed, in part, and the . . . Proposed Decision and Order . . . is hereby made absolute and final as modified herein." (*Id*. at 8.)

County thereafter filed the Petition asserting that it "disputes the [Board]'s award of impact bargaining following the determination that the [Vaccine Policy] constitutes a managerial prerogative." (Petition ¶ 5.) County requests that this Court reverse the Final Order with respect to its conclusion that the Vaccine Policy is subject to impact bargaining. (*Id*. ¶ 6.)

## II.    PARTIES' ARGUMENTS

County argues the "Final Order leaves the parties without guidance regarding the proper resolution of the matter." (County's Amended Brief (Br.) at 7.)[8] To the extent the Final Order suggests the Union is eligible to participate in impact bargaining, County argues the Final Order must be reversed. County argues the Union never requested impact bargaining and, without such a demand, County

---

[8] County filed a brief on October 2, 2023. However, it requested leave to file an amended brief with corrected citations to the Reproduced Record, which we granted. (Order, 12/1/23.)

cannot be responsible for failing to bargain. To the extent the Union subsequently requested or might request impact bargaining, County contends this Court has previously found such a request untimely. (*Id.* at 10-11 (*citing Teamsters Loc. 77 & 250 v. Pa. Lab. Rels. Bd.*, 786 A.2d 299, 308 (Pa. Cmwlth. 2001), and *Ass'n of Pa. State Coll. & Univ. Facs. v. Pa. Lab. Rels. Bd.* (Pa. Cmwlth., No. 263 C.D. 2009, filed Oct. 22, 2009), slip op. at 10-11).[9]) At oral argument before this Court, County represented that the time period for the Union to demand impact bargaining on the Vaccine Policy has passed. Moreover, given the importance of the managerial prerogative at issue, County maintains such a topic would not be subject to impact bargaining. County asserts this is not one of the topics, such as wages, hours, or terms and conditions of employment, subject to impact bargaining under the law. It argues the Court has concluded qualifications based on other medical standards are within management's prerogative and never required impact bargaining as a component of its implementation. (*Id.* at 12-13 (citing *Se. Pa. Transp. Auth. v. Transp. Workers' Union of Am., AFL-CIO*, 525 A.2d 1, 4 (Pa. Cmwlth. 1987), and *City of Sharon v. Rose of Sharon Lodge No. 3*, 315 A.2d 355, 356-57 (Pa. Cmwlth. 1973)).)

The Board argues County lacks standing because it was not aggrieved by the Final Order. Rather, according to the Board, County prevailed in that the Union's unfair labor practice charge was dismissed. Even if County has standing, the Board argues County waived any argument that separation from employment for not obtaining the vaccine was not discipline. According to the Board, "[t]he record suggested that [] County was, or could be, characterizing and treating an employe's

---

[9] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported opinion of this Court, while not binding, may be cited for its persuasive value.

9

separation from employment for not getting the COVID-19 vaccine as a disciplinary termination, and not merely a failure to meet conditions of employment," and County presented no argument refuting it was disciplinary termination. (Board's Br. at 13.) The Board argues the difference between separation for not meeting conditions of employment and disciplinary termination "is not mere semantics." (*Id*.) It explains:

> A separation from employment for failing to meet management's specified conditions for employment is a neutral, direct and necessary consequence of the managerial prerogative of requiring employes to receive the COVID-19 vaccine as a condition of employment. . . .
>
> However, as shown by the Union, characterizing the separation from employment as a disciplinary termination carries added repercussions over and above job loss.

(*Id.* at 13-14.) These repercussions include ineligibility for unemployment compensation and difficulty finding future employment as a police officer or in the security field. The Board maintains "[t]hese collateral consequences of characterizing the separation from employment as a disciplinary termination [are] [] unnecessary, severable and [] 'added insult to injury' of the separation from employment itself." (*Id.* at 14.) Characterization of the separation, according to the Board, is severable from the employer's right to terminate the employment relationship and is subject to collective bargaining. Notwithstanding, here, the Union did not demand impact bargaining so "the Board has not had occasion, through the filing of unfair labor practices alleging an 'impact bargaining' violation[,] to address the factual issue raised by [] County in its appeal." (*Id.* at 15 (footnote omitted).) At oral argument, the Board clarified that the Final Order's discussion of the Vaccine Policy being subject to impact bargaining was **not**

**essential to its decision** in determining that there had been no unfair labor practice on the part of the County. The Board merely wanted to clarify that in the future, County should impact bargain over the disciplinary provisions of policies like the Vaccine Policy here. Further, the Board argues that the Final Order had no effect on County as the Board concluded that County committed no unfair labor practice. As such, "there is no present case or controversy before the Court," and the Board asks that County's Petition be dismissed. (*Id.*)

The Union[10] argues the Board did not err by concluding the Vaccine Policy was a managerial prerogative but also subject to impact bargaining since its impact on discipline was severable. It argues County's reliance on *Teamsters Local 77* is misplaced because there the union contended its unfair labor practice charge constituted a demand for impact bargaining. Here, the Union explains, the charge was focused on whether the Vaccine Policy was a mandatory subject of bargaining before implementation and once the Board resolved that issue, finding it was not, the Union could then request impact bargaining, to which the Board found the Vaccine Policy was subject. The Union further argues that, contrary to County's assertions, the Vaccine Policy has resulted in discharges for noncompliance, a form of discipline, not merely disqualifications, which would be subject to impact bargaining. In support of this argument, the Board points out that four police officers were terminated for noncompliance and grieved those discharges for lack of just cause under the parties' CBA.[11] The Union asserts, under the CBA and Board precedent, matters of discipline are subject to negotiation and prior to this Board

---

[10] On June 29, 2023, the Union provided notice that it would intervene in this appeal as of right pursuant to Pennsylvania Rule of Appellate Procedure 1531, Pa.R.A.P. 1531.

[11] The Union notes that those grievances were held in abeyance pending the outcome of the unfair labor practice action. (Union's Br. at 35.)

decision, were subject to mandatory bargaining, and this decision was a matter of first impression, concluding that vaccine mandates were within managerial prerogative. The Union contends that "vaccinations are not customarily considered a usual job requirement/qualification to be certified as, or work as, a police officer in the Commonwealth." (Union's Br. at 36.) Moreover, the Union argues that the record shows the Vaccine Policy had little effect on slowing the spread of COVID-19 among fully vaccinated officers, thus undercutting County's argument that its purpose was to protect the general public. Because the Vaccine Policy impacts the terms and conditions of employment and created an entirely new ground for discipline, the Union argues, like *Cambria County Transit Authority*, it is properly subject to impact bargaining, notwithstanding it falling within managerial prerogative. At oral argument, however, the Union, like County, conceded that the time period to demand impact bargaining for the Vaccine Policy has passed. Union explained that the only effect that the Final Order would have on County is that in a grievance arbitration, the Union could seek to introduce the Final Order before an arbitrator for persuasive value. The Union also joined in the Board's argument that County lacks standing in this matter. Accordingly, the Union asks the Court to affirm the Final Order.

III. ANALYSIS

Before reaching County's arguments, we must address the Board's argument that County has not been aggrieved by the Final Order and, thus, does not have standing. Issues of justiciability, like standing, "are threshold matters generally resolved before a court addresses the merits of the parties' dispute." *Ivy Hill*

12

*Congregation of Jehovah's Witnesses v. Dep't of Hum. Servs.*, 310 A.3d 742, 753 (Pa. 2024).

Regarding standing, "[o]ur inquiry is whether the putative plaintiff has demonstrated that she is 'aggrieved,' by establishing a substantial, direct and immediate interest in the outcome of the litigation." *Allegheny Reprod. Health Ctr. v. Dep't of Hum. Servs.*, 309 A.3d 808, 832 (Pa. 2024) (citing *Robinson Township, Washington County v. Commonwealth*, 83 A.3d 901, 917 (Pa. 2013)).

> A substantial interest in the outcome of litigation is one that surpasses the common interest of all citizens in procuring obedience to the law. A direct interest requires a causal connection between the asserted violation and the harm complained of. An interest is immediate when the causal connection is not remote or speculative.

*Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467, 473 (Pa. 2021) (citation omitted).

"Additionally, a party is aggrieved when the party has been adversely affected by the decision from which the appeal is taken. . . . Generally, a party who prevailed in a proceeding is not an aggrieved party and, therefore, has no standing to appeal." *Cook v. Pa. Lab. Rels. Bd.*, 315 A.3d 885, 903 (Pa. Cmwlth. 2024) (internal citation and quotation marks omitted). Likewise, "[a] prevailing party that disagrees with the legal reasoning of an order or a court or agency **or may have had a particular issue decided against it** lacks standing to appeal **because it is not adversely affected by the order**." *Maple St. A.M.E. Zion Church v. City of Williamsport*, 7 A.3d 319, 322 (Pa. Cmwlth. 2010) (emphasis added). A party that disagrees with dicta likewise is not aggrieved. *Bldg. Indus. Ass'n of Lancaster Cnty. v. Manheim Township*, 710 A.2d 141, 147-48 (Pa. Cmwlth. 1998). Moreover, "the possibility of future litigation is not enough to establish a sufficient injury for the purpose of

standing." *Brandywine Village Assocs. v. E. Brandywine Twp. Bd. of Supervisors* (Pa. Cmwlth., No. 164 C.D. 2017, filed Jan. 5, 2018), slip op. at 14 (citing *Empire Coal Min. & Dev., Inc. v. Dep't of Env't Res.*, 623 A.2d 897, 900 (Pa. Cmwlth. 1993)); *see also* 9 West's Pa. Prac., Workers' Comp. § 22:85 (4th ed. 2022) ("[A] party must be aggrieved by the **order** . . . to have standing to file an appeal. That is so because the **effect** of the order at issue, **not the language or the opinion or rationale underlying the order**, conveys the status of aggrieved party.") (first emphasis in original) (footnote omitted); *Empire Coal*, 623 A.2d at 900 (holding that an order dismissing a company's appeal of an order directing the township to close a landfill on land that the company was mining and for the company to move its mining operations 300 feet away from its present location did not have standing because the order did "not require [the company] to do, or refrain from doing, anything" since the language of the order did not force the company to "relocate its mine or restrict its mining operations on the site" and the order was simply advisory).

In *City of Philadelphia v. Pennsylvania Labor Relations Board* (Pa. Cmwlth., No. 1052 C.D. 2019, filed December 14, 2020), this Court addressed the issue of whether the city therein had standing to seek review of the Board's final order, which sustained in part and dismissed in part the fraternal order of police's (FOP) exceptions to a hearing examiner's proposed decision. In the proposed decision, the hearing examiner determined that the case was prematurely filed, as the challenged policy involving the release of the names of officers involved in a shooting was not yet in effect and dismissed the unfair labor practice charge for failure to collectively bargain. The FOP filed exceptions, and in the discussion portion of the final order the Board stated that "[h]ad the [charge] not been prematurely filed before implementation, [it] would find that the [c]ity's protocol for release of police

officer[s'] names when they were involved in a shooting would be a mandatory subject of bargaining[.]" *City of Philadelphia*, slip op. at 4 (emphasis omitted). The city filed a petition for review, and, before this Court, the Board argued that the city did not have standing because it was the prevailing party before the Board and was not aggrieved by the final order. The city did not argue that the Board erred in dismissing the charges as premature, but argued it was aggrieved by the Board's analysis that the policy would be a mandatory subject of bargaining because "the Board's ruling on the release-of-names issue could adversely affect it through lost leverage in subsequent negotiations . . . where the opposing side will certainly highlight the Board's decision here." *Id*. at 5 (internal quotation marks and citation omitted). Further, the city argued that it had standing because the Board's order dismissed in part and sustained in part the exceptions and modified the final order by incorporating its discussion, so the Board's mandatory bargaining discussion was not dicta and was necessary to the Board's order.

The Court explained that a party is not aggrieved where it disagrees with the legal reasoning behind a decision or had a certain issue decided against it. *Id*. at 5 (citing *Maple St. A.M.E.*, 7 A.3d at 322). The Court noted that dicta is an "opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision[,]" *id*. at 7 (quoting *City of Lower Burrell v. City of Lower Burrell Wage & Policy Commission*, 795 A.2d 432, 437 n.7 (Pa. Cmwlth. 2002) (emphasis omitted), and that "[d]isagreement with dicta does not render a prevailing party aggrieved[,]" *id*. (citing *Manheim Township*, 710 A.2d at 147-48)). With these principles in mind, the Court stated:

> [T]he Board decided that the [h]earing [e]xaminer properly dismissed
> the [c]harges and, thus, the Board's [f]inal [o]rder dismissed the

15

[c]harges in the [c]ity's favor. Given the Board's conclusion that the [h]earing [e]xaminer properly dismissed the . . . [c]harge as premature, the Board's discussion with respect to mandatory bargaining was **not essential** to the Board's ultimate decision in the [c]ity's favor and, thus, was dicta. *See . . . City of Lower Burrell.* This conclusion is buttressed by the Board's hypothetical language, that "had the . . . [c]harge] not been prematurely filed before implementation, **we would find** that the [c]ity's protocol for release of police officers['] names when they were involved in a shooting would be a mandatory subject of bargaining[.]"[]
. . . Accordingly, the Board's opinion on the merits of the . . . [c]harge was not essential to the Board's timeliness decision but, rather, described what the Board would have decided had it substantively ruled thereon. Although the [c]ity "**disagrees with the legal reasoning** of [the Board's [f]inal [o]rder] **or may have had [the mandatory bargaining] issue decided against it**[, the city] lacks standing to appeal because it [wa]s **not adversely affected** by the Board's [f]inal [o]rder." *Maple St. A.M.E.*, 7 A.3d at 322.

*Id*. at 8-9 (some emphasis in original, some bracketing in original, footnote omitted).

The Court further noted:

Curiously, the Board, in the discussion portion of its [f]inal [o]rder, addressed the mandatory bargaining issue in a hypothetical context and did not explicitly sustain the FOP's exception on that issue. Further, the Board concluded the discussion portion, stating:

> After a thorough review of the exceptions and all matters of record, the [h]earing [e]xaminer did not err in concluding that the . . . [charge] was prematurely filed, and therefore the [c]ity did not violate Section 6(1)(a) and (e) of the PLRA. Additionally, the [h]earing [e]xaminer did not err . . . in concluding that the [c]ity did not violate Section 6(1)(a) and (c) of the PLRA when it did not provide a 24/7 security detail to a police officer who resided outside of the [c]ity. Accordingly, the exceptions filed by the FOP . . . shall be dismissed, and the . . . [proposed decision] made absolute and final.

. . . . However, the order portion of the [f]inal [o]rder states that "the exceptions filed by the [FOP] are hereby dismissed in part, and sustained in part, and the [proposed decision] be and hereby is made

16

> absolute and final, as modified herein." . . . Nonetheless, the [c]harges were dismissed and the [c]ity prevailed. Thus, the [c]ity is not aggrieved.

*Id.* at 8 n.8 (citation and emphasis omitted). Accordingly, the Court quashed[12] the city's petition for review.

A thorough review of the Final Order leads this Court to conclude that, similar to the Board's discussion of mandatory bargaining in *City of Philadelphia*, the Board's discussion of the Vaccine Policy being a new form of discipline subject to impact bargaining was dicta. Similar to *City of Philadelphia*, the Board found no unfair labor practice occurred. Further, in the order portion of the Final Order, the Board sustained the Union's exceptions in part and modified the Hearing Examiner's Proposed Decision based on the discussion portion of the Final Order, which explicitly "sustain[ed]" the Union's exception with respect to the Vaccine Policy being subject to impact bargaining and "vacated" the Hearing Examiner's conclusion as to that issue. (Final Order at 8.) In *City of Philadelphia*, although the discussion portion of the final order did not state that it was sustaining the FOP's exception, this Court noted that the order portion of the final order did sustain FOP's exceptions, in part, and modified the hearing examiner's proposed order based on the discussion portion of the order where the Board opined the issue would have been subject to mandatory bargaining had the charge not been filed prematurely. *See City of Philadelphia*, slip op. at 9 n.8. The **effect** of the Final Order on County here is the same as the effect the order in *City of Philadelphia* had on the city – there was

---

[12] Although the Court in *City of Philadelphia* quashed the city's appeal for lack of standing, the proper resolution would be to dismiss the appeal. *See Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 403 (Pa. 2021) ("Pennsylvania . . . does not view standing as a jurisdictional question."); *Sahutsky v. H.H. Knoebel Sons*, 782 A.2d 996, 1001 n.3 (Pa. 2001) (noting quashal is appropriate where the Court lacks jurisdiction).

no unfair labor practice. 9 West's Pa. Prac., Workers' Comp. § 22:85 (4th ed. 2022) ("the **effect** of the order at issue, **not the language or the opinion or rationale underlying the order**, conveys the status of aggrieved party"). The Final Order states "the charge is **dismissed** and the complaint is **rescinded**." (R.R. at 202 (emphasis added).) The Final Order also did not direct County to take any action or refrain from doing anything. *Empire Coal*, 623 A.2d at 900.

The charge asserted against County is also of particular importance as demonstrated by the case of *PSSU, Local 668 of SEIU, AFL-CIO v. Pennsylvania Labor Relations Board*, 763 A.2d 560 (Pa. Cmwlth. 2000). In that case, the Court explained that the Board did not err when it did not engage in an analysis of the employer's failure to impact bargain **since the employer was not charged with refusing to bargain the impact of the challenged policy**, and it was "apparent" from the "unfair labor charge that [the union] was challenging the [policy] as a mandatory subject of bargaining, **rather than asserting its separate impact on the terms and conditions of employment**[.]" *Id*. at 563-64 (emphasis added). In initiating this action, the Union filed an unfair labor practice charge against County asserting that the Vaccine Policy was subject to **mandatory bargaining** under Section 6(1)(a) and (e) of the PLRA. (*See* R.R. at 3 ¶ 7; Union's Br. at 32-33 ("[T]he [Union's] timely filed Charge and Complaint . . . alleged that compelled vaccination was a **mandatory** subject of bargaining that required **collective bargaining** with the Union before the [Vaccine P]olicy was implemented . . . , **not impact bargaining** once the policy took effect, and **impact was later ascertained**.") (emphasis added).) As demonstrated by *PSSU*, the Board here did not need to reach the issue of impact bargaining since the Union only asserted that the Vaccine Policy was subject to **mandatory bargaining**. In other words, the Board could have ended its Final Order

18

where it affirmed the Hearing Examiner's finding that there was no unfair labor practice because the Vaccine Policy was a matter of inherent managerial prerogative not subject to mandatory bargaining, which was the basis for the Union's unfair labor practice charge; the remainder of the Board's discussion was thus dicta. Although the Union filed an exception to the Board based on an argument that the Vaccine Policy was a new form of discipline subject to impact bargaining, this was not the issue the Union presented in the unfair labor practice charge asserted against County; thus, it was not **essential** to the Board's Final Order. *See City of Philadelphia*, slip op. at 7 (defining dicta as an "opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision") (emphasis added).

Further, the Court in *City of Philadelphia* did not find the city's argument that "the Board's ruling . . . could adversely affect it through lost leverage in **subsequent negotiations** . . . where **the opposing side will certainly highlight the Board's decision**" persuasive to confer standing. *City of Philadelphia*, slip op. at 5-6. Here, the Union conceded at oral argument that it would bring the Final Order into the grievance arbitrations that are pending following the resolution of this dispute.[13] However, the threat or potentiality of future litigation is simply not enough to establish standing. *Brandywine Village*, slip op. at 14; *Empire Coal*, 623 A.2d at 900. Although there are grievance arbitrations pending, an arbitrator has the discretion to determine the probative value of evidence, *AFSCME District Council 88 v. County of Lehigh*, 798 A.2d 804, 808 (Pa. Cmwlth. 2002), and, the Board has exclusive authority to adjudicate an unfair labor practice charge, *Hollinger v. Department of Public Welfare*, 365 A.2d 1245, 1249 (Pa. 1976). *See also*

---

[13] We reiterate that all parties conceded at oral argument that the time frame for the Union to demand impact bargaining has passed.

19

*Chambersburg Borough v. Pa. Labor Rels. Bd.*, 106 A.3d 212, 228 (Pa. Cmwlth. 2014) (explaining that where an action may violate both a contract and the PLRA, the Board will review the agreement for repudiation and where there is no repudiation, the Board will dismiss the unfair labor practice charge and the "issue **then becomes one of contractual interpretation to be addressed in arbitration**") (emphasis added). Thus, that the Union may use the Final Order in pending grievance arbitrations does not confer standing on County here.

Because County prevailed on the unfair labor charge that the Union asserted against it based on County's refusal to collectively bargain over the Vaccine Policy, the Board's discussion regarding the disciplinary provisions of the Vaccine Policy being subject to impact bargaining is not essential to its decision and is dicta. Accordingly, County does not have standing in this matter and we must dismiss the Petition.[14]

_____

**RENÉE COHN JUBELIRER,** President Judge


Judge McCullough concurs in the result only.

---

[14] Because we dismiss the appeal, we do not reach the merits of whether the Board erred in stating that the Vaccine Policy was a new form of discipline subject to impact bargaining.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

County of Allegheny,                          :
                     Petitioner     :
                              :
            v.                          :   No. 617 C.D. 2023
                              :
Pennsylvania Labor Relations Board,    :
                 Respondent     :

# **O R D E R**

     **NOW**, August 8, 2024, the Petition for Review filed by County of Allegheny is **DISMISSED**.

 

                                            _____

                                          **RENÉE COHN JUBELIRER,** President Judge