**CITY OF PHILADELPHIA, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 2000.
Decided March 29, 2001.

Randall J. Sommovilla, Philadelphia, for petitioner.

Keith A. Herbster, Harrisburg, for respondent.

Thomas W. Jennings, Philadelphia, for intervenor, Fraternal Order of Police, Lodge No. 5.

Before DOYLE, President Judge, and COLINS, J., McGINLEY, J., SMITH, J., FRIEDMAN, J., KELLEY, J., and LEADBETTER, J.

SMITH, Judge.

The City of Philadelphia (City) petitions for review of a final order of the Pennsylvania Labor Relations Board (Board) that denied the City's exceptions and made final a proposed decision and order that determined that the City had committed an unfair labor practice by failing to expunge an entry in the Internal Affairs Division (IAD) record of Officer Bruce De-Noble after the Fraternal Order of Police, Lodge No. 5 (FOP) secured a grievance arbitration award overturning Officer De-Noble's dismissal and directing that his record be expunged and cleared. The City

questions whether the Board erred in finding that the arbitration award required the City to remove the "sustained case" from the IAD records or whether the Board erred in failing to find that the arbitration award is ambiguous.[1]

The facts underlying the present matter have never been disputed. On January 13, 1994, around 6:10 p.m., twenty-seven plastic vials containing cocaine were found in Officer DeNoble's patrol jacket in his locker during an unannounced search of lockers. The district attorney declined to prosecute for illegal possession of cocaine. Officer DeNoble then stated in an interview that he found the drugs on the highway at approximately 12:10 a.m. while participating in an arrest of fourteen males for disorderly conduct. He admitted that he failed to prepare a report for taking possession of illegal drugs or to notify any supervisor and that he improperly retained control of the contraband. The Police Commissioner discharged Officer DeNoble under Section 1.75 of the Police Disciplinary Code, relating to conduct unbecoming an officer, stating that his actions violated Departmental Directives No. 54, requiring the preparation of departmental reports, No. 71, prohibiting storing of contraband in a locker, and No. 91, requiring accounting for illegal drugs taken into custody on a property receipt.

The parties agreed to present the following issue to the arbitrator: "Was Bruce DeNoble terminated for just cause?" The arbitrator took note of Officer DeNoble's commendations. He stated that the City's allegations that the officer might be dealing drugs or illegally exchanging drugs for information, known as "farming," were based solely on speculation, and he declined to apply the presumption that arises in the criminal setting that possession of the amount of drugs involved here indicated intent to deliver them. Further, he noted that Officer DeNoble passed a urine test for drugs. The arbitrator quoted Section 5.15 of the Police Disciplinary Code, relating to failure to follow department procedures for the handling of evidence, personal effects and all other property taken into custody, including the provision of discipline for a first offense of reprimand to five days of suspension. He stated that, in view of the issue presented, he could not apply Section 5.15 but was restricted either to returning Officer DeNoble to his former position and making him whole or to upholding the termination.

The arbitrator determined: "There is no question that P/O DeNoble made a mistake, and admitted it. There is also no question that the City has not proven just cause and therefore, the grievance should be sustained." Arbitrator's Decision, p. 19. The arbitrator made the following award: "Bruce DeNoble was not terminated for just cause. Therefore, the grievance is sustained and Bruce DeNoble is to be returned to his former position with the City of Philadelphia Police Department and made whole in every respect. Further, his record should be expunged and cleared to the fullest extent." *Id.* The City did not appeal. The City reinstated Officer DeNoble to his former position, and it expunged all reference to his termination from his personnel file. The City did not, however, remove the indication in the separately maintained IAD file that a complaint lodged by a sergeant of "Drugs Found in Locker" was "Sustained."

The FOP filed an unfair labor practice charge with the Board, asserting that the

---

**1.** The City has withdrawn its argument that expunging the IAD file might render it noncompliant with a consent decree that was filed in federal court well after the arbitration award.

City violated Section 6(1)(a) and (e) of the Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. § 211.6(1)(a) and (e), and the Act commonly known as Act 111, Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10, by refusing to comply with the arbitration award. Following a hearing, the hearing examiner issued the proposed decision and order concluding that the City had committed an unfair labor practice by maintaining the IAD record. The City filed timely exceptions, which the Board dismissed.[2]

■ When an unfair labor practices charge asserts a refusal to comply with a grievance arbitration award, the Board must determine whether an arbitration award exists, whether the appeal process has been exhausted and, if so, whether the party has failed to comply with the award. *Pennsylvania Labor Relations Board v. Commonwealth,* 478 Pa. 582, 387 A.2d 475 (1978). The Board examines the evidence to determine whether the party failed to comply, but it does not review the merits of the award. *Id.* Because there is no dispute here that the award exists and that it was not appealed, the only question before the Board was whether the City failed to comply. The FOP, as the moving party, had the burden of proof. *Id.* In determining whether an award has been complied with, the Board must ascertain the arbitrator's intent. *United School District,* 13 PPER ¶ 13170 (Final Order, 1982).

The City first argues that the Board erred in determining that the arbitration award required the City to remove the notation from the IAD records. The City contends that the opinion of the arbitrator shows that he considered only the narrowly framed question of whether Officer DeNoble's termination was for just cause. Officer DeNoble had admitted misconduct in the handling of the drugs found in his locker, and the arbitrator concluded only that the admitted misconduct did not justify discharge. The City, therefore, argues that the remedy fashioned by the arbitrator was similarly limited and was not intended to encompass matters beyond the termination. Further, the City asserts that the arbitrator did not determine that the conduct merited no penalty, citing the arbitrator's statement that he could not apply Section 5.15 of the Police Disciplinary Code. The City draws the analogy to criminal proceedings and contends that Officer DeNoble was not "acquitted" but rather his "sentence" of discharge was overturned, which does not entitle him to expungement.

The City maintains that to interpret the award more broadly would go beyond the "make whole" remedy that the arbitrator had authority to fashion and explicitly intended. It asserts that the hearing officer and the Board broadened relief beyond the scope of the award, which made no mention of the IAD record. Further, as a matter of public policy the Department owes a duty to monitor misconduct charges. An IAD record contains a notation that charges were either sustained, not sustained, unfounded or exonerated. Here, although Officer DeNoble admitted misconduct in the handling of contraband, the Board's interpretation of the award would place him in a better position than an officer whose record showed an unfounded complaint. In addition, the City

---

**2.** The Court's review of the Board's order is limited to determining whether the necessary findings of fact are supported by substantial evidence in the record and whether an error of law or a constitutional violation was committed. *Upper Makefield Township v. Pennsylvania Labor Relations Board,* 717 A.2d 598 (Pa.Cmwlth.1998), *aff'd,* 562 Pa. 113, 753 A.2d 803 (2000).

cites *Beck v. City of Pittsburgh,* 89 F.3d 966 (3d Cir.1996), for the proposition that a municipality may face civil rights liability if it fails to maintain records, to consider complaints of misconduct and to take precautions against future misconduct.

In the alternative the City argues that the Board has recognized that "[i]f the language of an arbitration award is ambiguous and [the Board] therefore is not able to state with any assurance that the award has not been complied with, a charge alleging noncompliance must be dismissed because the charging party has the burden of proving noncompliance." *Pennsylvania Department of Labor & Industry,* 17 PPER ¶ 17177 (Final Order, 1986). The arbitration award referred to *"his* record" (emphasis added), without specifying Officer DeNoble's personnel or other records and without stating whether the award referred to the record of the termination or of the termination and the underlying proven and admitted misconduct. Because the IAD record was never considered during the arbitration proceeding at all, the City argues that the award is at best ambiguous as to whether the IAD record was intended to be covered.

The Board in response emphasizes the arbitrator's direction to the City to expunge and clear Officer DeNoble's record "to the fullest extent." It asserts that the arbitrator did not sustain the charges leveled by the City, nor did Officer DeNoble admit that he was dealing drugs or was exchanging drugs for information.[3] The Board argues that the arbitrator's direction that Officer DeNoble's "record" be cleared "to the fullest extent" necessarily

included the IAD record as well as the personnel record. It contends that permitting the sustained case notation to remain and to have an impact on all future personnel decisions does not return DeNoble to his former position and make him whole in every respect. The Board points out that neither record was mentioned in the award.

The FOP as Intervenor states that the hearing examiner rejected the City's analogy that Officer DeNoble was not "acquitted" but merely had his "sentence" overturned. The FOP asserts that the arbitrator did not find Officer DeNoble guilty of anything. The arbitrator stated only that Officer DeNoble made a "mistake," but he made no findings of any *mens rea* or anything that would indicate wrongdoing. The FOP views the arbitrator's reference to Section 5.15 of the Police Disciplinary Code as *obiter dictum,* and it states that if the arbitrator intended only to overturn the "sentence" he would have ordered reinstatement and nothing more. Instead, he ordered expungement of Officer DeNoble's record in the broadest and strongest possible terms. As for the policy concerns cited by the City, the FOP points out that *Beck* dealt solely with internal departmental investigations, whereas the present case involves an impartial arbitrator's independent determination.

The Court agrees with the City that the arbitrator's decision, read as a whole, does not indicate an intent to fashion an award reaching beyond the narrow question presented to the arbitrator, i.e., whether Offi-

---

**3.** The Board contends that the City failed to meet its burden to prove just cause for Officer DeNoble's discharge, and it is now attempting to overturn the unappealed arbitration award through the back door. The Supreme Court recently stated in *Borough of Lewistown v. Pennsylvania Labor Relations Board,* 558 Pa.

141, 735 A.2d 1240 (1999), that permitting a party aggrieved by an arbitrator's decision to refuse to abide by it and then to relitigate the validity of the award in a subsequent enforcement proceeding would undercut strong policies favoring the effectiveness of the arbitration process, finality and judicial economy.

cer DeNoble's termination was for just cause. First, contrary to the assertions of the Board and the FOP, the arbitrator unquestionably recognized that Officer De-Noble had violated various departmental directives and had committed misconduct in his handling of the drugs that were found in his locker. The arbitrator's pointed reference to Section 5.15 of the Police Disciplinary Code clearly implied that he thought that section applied, but he stated that he was restricted to deciding only the narrow question presented of whether the termination was for just cause. The arbitrator decided the question in the light of the established and admitted fact that Officer DeNoble committed misconduct by failing to properly report and dispose of a significant quantity of illegal drugs. The arbitrator determined that further accusations of drug dealing or "farming" had not been established, and he concluded on that basis that there was a lack of just cause for termination. His entire analysis, however, was based upon accepting the fact that Officer DeNoble mishandled the drugs in his locker.

The arbitrator refrained from applying an otherwise applicable directive relating specifically to mishandling of property taken into custody, and limited himself to reversing the termination. Thus there is little reason to suppose that the direction that Officer DeNoble's record be cleared "to the fullest extent" referred to anything other than the record of termination. As the City notes, the record of termination was to be expunged, and that record was contained in the officer's personnel file; hence there was no need to refer expressly to the personnel file. The City is correct that expunging the IAD file would mean that Officer DeNoble, alone among police officers who have committed or have been accused of misconduct, would have no IAD notation. The Court further agrees that if the arbitrator did intend to order expungement of the IAD record, such an intent would go beyond the scope of the question presented to him.

■ This Court has held that arbitrators exceed their jurisdiction when they address questions not submitted to them by the parties. *Marple Township v. Delaware County F.O.P. Lodge 27*, 660 A.2d 211 (Pa.Cmwlth.1995). The Court does not entertain an improper challenge to an unappealed arbitration award by interpreting that award in an enforcement proceeding so as not to encompass an intent beyond the arbitrator's jurisdiction. Without some express basis for intrusion into IAD files, the language of the award here should not be interpreted to indicate an intent to affect matters beyond the narrow question of just cause for termination. At most the award was ambiguous on the question of whether the arbitrator intended for the IAD file to be expunged. As a matter of law, the Board should have held that the FOP did not meet its burden to show that the City failed to comply with the award. Accordingly, the order of the Board is reversed.

### *ORDER*

AND NOW, this 29th day of March, 2001, the order of the Pennsylvania Labor Relations Board is reversed.

FRIEDMAN, Judge, dissenting.

In this case, the Pennsylvania Labor Relations Board (PLRB) issued a final order requiring the City of Philadelphia (City) to implement an arbitration award by expunging and clearing the record of Officer Bruce DeNoble, including his internal affairs division (IAD) record which the City did not treat as encompassed within the arbitration award. The PLRB determined that, by maintaining the IAD rec-

ord, the City had committed an unfair labor practice by failing to comply with the arbitration award directing the City to make Officer DeNoble "whole in every respect" and to expunge and clear his record "to the fullest extent."[1] Because I agree with the PLRB's determination, I respectfully dissent.

The arbitration award at issue here provides:

Bruce DeNoble was not terminated for just cause. Therefore, the grievance is sustained and Bruce DeNoble is to be returned to his former position with the City of Philadelphia Police Department and made whole in every respect. Further, his record should be expunged and cleared to the fullest extent.

(Arbitrator's op. at 19.) Importantly, the City did not appeal this award or ask that it be clarified. Instead, the City's only challenge to the award took place during the unfair labor practice proceeding brought by DeNoble to enforce the award. Only at that point did the City argue that it was error to require the City to expunge Officer DeNoble's IAD record. Specifically, the City contended that: (1) the Arbitrator's award did not require the City to expunge the IAD records and to construe it as such would expose the City to civil liability; and (2) the Arbitrator's award was too ambiguous to sustain an unfair labor practice charge.[2] The City raises these same arguments on appeal to this court.

The City first argues that the Arbitrator's award did not require, nor did the Arbitrator intend, removal of Officer DeNoble's IAD record and that the PLRB concluded otherwise because it failed to look beyond the four corners of the Arbitrator's award. The City contends that the award should be examined in the context of the narrow issue before the Arbi-

1. The City's Police Commissioner had discharged Officer DeNoble for various infractions of Police Department Directives connected to a January 13, 1994 incident, when twenty-seven plastic vials of cocaine were found inside a patrol jacket which Officer DeNoble had left inside his locker. The termination was grieved, and the matter went to arbitration, where the parties stipulated the issue for arbitration as "Was Bruce DeNoble terminated for just cause?" The Arbitrator noted that there was a provision setting forth appropriate discipline for failure to follow department procedures for the handling of evidence and other property taken into custody, specifically, section 5.15 of the Police Department Disciplinary Code, which provides that an officer guilty of a first offense under section 5.15 is subject to discipline in the form of a reprimand up to a five-day suspension. However, because the parties agreed that the issue in the case was limited to whether Officer DeNoble was terminated for just cause, the Arbitrator felt he could not apply section 5.15 but, rather, was restricted to either returning Officer DeNoble to his former position and making him whole, or to upholding the termination. (Arbitrator's op.

at 19.) The Arbitrator sustained the grievance concluding that, although Officer DeNoble made a mistake and admitted it, the City did not prove just cause for discharge.

Following issuance of the arbitration award, the City proceeded to delete all references to the incident contained in Officer's DeNoble's personnel file. However, the City retained an IAD record of the underlying investigation; the IAD record referenced a complaint against Officer DeNoble for having drugs in his locker as "sustained." (R.R. at 95a.) This action prompted the filing of an unfair labor practice charge against the City for refusing to comply with the Arbitrator's award, (R.R. at 3a 5a) and, following a hearing, the PLRB hearing examiner concluded that the City committed an unfair labor practice by maintaining Officer DeNoble's IAD record.

2. The City also argued that elimination of the IAD record would force the City to violate a federal court consent decree requiring the City to maintain IAD records. However, as noted by the majority, the City subsequently withdrew this argument.

trator and the Arbitrator's findings and opinion.

The City distinguishes this case from discipline and discharge cases where the arbitrator finds that the underlying misconduct is either unproven or does not warrant any discipline. The City claims that, unlike those cases, the Arbitrator here acknowledged Officer DeNoble's admitted misconduct and recognized that this misconduct warranted discipline short of discharge. According to the City, because the Arbitrator decided only that the *discharge* was unjustified, his award must be viewed as similarly limited, intending only to require the City to expunge the *discharge* from Officer DeNoble's personnel file, not to remove reference to the underlying misconduct in his IAD record. Indeed, the City maintains that a broader interpretation of the Arbitrator's award would go beyond the "make whole" remedy the Arbitrator intended by erasing the admitted misconduct simply because the discipline meted out was too severe.[3]

Moreover, relying on *Beck v. City of Pittsburgh*, 89 F.3d 966 (3d Cir.1996), *cert. denied*, 519 U.S. 1151, 117 S.Ct. 1086, 137 L.Ed.2d 219 (1997), the City asserts that,

because maintenance of IAD records is an integral part of the Police Department's mandate to serve and protect the public, an arbitrator's award requiring expungement of an officer's admitted mishandling of narcotics could subject the City to potential civil liability.[4] In light of this possibility, the City suggests that the PLRB had no basis to conclude that the expungement aspect of the Arbitrator's award included elimination of Officer DeNoble's IAD record of admitted misconduct absent any explicit reference to IAD records in the arbitration proceedings, the Arbitrator's decision or the arbitration award. I would disagree.

The City would have us view the arbitration award as directing only that Officer DeNoble's personnel, not his IAD, record be cleared of the rescinded discipline.[5] However, the Arbitrator made no such distinction in the award; rather the award, in a broad and general manner, directed expungement of Officer DeNoble's "record" to the "fullest extent." Thus, there is no support in the award for the distinction now urged by the City and rejected by the PLRB. In determining the intent of the arbitrator, the PLRB must read the award in its entirety but will not draw a distinc-

---

3. The City contends that expungement of the IAD record would place Officer DeNoble in a better position than he would have occupied had the Arbitrator believed he had authority to modify the discipline imposed and, further, would place Officer DeNoble in a better position than an officer whose conduct was based on a totally unfounded complaint. However, this argument, made by the City and accepted by the majority here, misses the point, which is that the Arbitrator sustained Officer DeNoble's grievance and ordered that his records be expunged and cleared *"to the fullest extent."* Indeed, the City's argument in this regard displays a lack of understanding of expungement and "make whole" remedies, which are designed to place the successful grievant in a position as if the discipline, including the facts leading up to that discipline, had never happened.

4. Despite the City's reliance on *Beck,* that case is not particularly helpful to the City because it has nothing whatsoever to do with an impartial arbitrator's award. Rather, *Beck* dealt solely with the shortcomings of internal departmental investigations.

5. In this, the City's argument is inherently inconsistent. The City contends that there is no basis to extend the award's expungement remedy to IAD records because the award makes no explicit reference to these records; however, the award does not explicitly reference personnel records either, and yet, the City argues that the award only requires the expungement of personnel records.

tion where none exists in the award. *See Pennsylvania Labor Relations Board v. Shaler Area School District*, 14 Pa.Pub. Employee R. ¶ 14255 (1983). Clearly, an IAD file must be considered part of an employee's employment record where, as conceded by the City, a check of the IAD record may impact on future transfer and promotion decisions affecting the employee.[6] (*See also* R.R. at 140a, 152a.) Thus, to permit the City to retain Officer DeNoble's IAD record would mean that Officer DeNoble was not "returned to his former position ... and made whole in every respect" as the arbitration award clearly requires.

The City contends that by directing expungement of the IAD record, the PLRB broadened the Arbitrator's award beyond that which he logically intended. However, by picking and choosing between those records it wishes to retain and those it believes are covered by the arbitration award, the City actually is attempting to narrow the award. Had the Arbitrator intended only to overturn Officer DeNoble's *discharge*, as the City suggests, the Arbitrator would have ordered reinstate-

ment and nothing more. Instead, the Arbitrator also ordered expungement of Officer DeNoble's record in the strongest and broadest terms possible. Thus, I believe that the PLRB properly concluded that the Arbitrator's award of the expungement remedy logically referred to more than the mere decision of termination. (PLRB op. at 2.)

Further, this argument raised by the City amounts to little more than a collateral attack on the arbitration award. The law is clear that after the expiration of the appeal period following issuance of an arbitration award, that award may not be collaterally challenged in an unfair labor practice proceeding brought to enforce the award.[7] *See Borough of Lewistown v. Pennsylvania Labor Relations Board*, 558 Pa. 141, 735 A.2d 1240 (1999); *Pennsylvania Labor Relations Board v. Commonwealth*. Thus, having failed to appeal that award, or ask to have it clarified or modified, the City cannot now complain that the PLRB refuses to look behind the clear language of the award to determine what the City alleges is a different intent. Nei-

---

**6.** An officer's IAD record is kept separate from his personnel file. When an officer applies for a transfer to a specialized unit or for a promotion, or when an officer has been charged with misconduct, an "IAD check" may be run to see if similar charges or other complaints of misconduct were brought against the officer in the past. In fact, Officer DeNoble requested a transfer on three occasions following the January 1994 incident and, in each case, his IAD record was discussed during the interview. Officer DeNoble did not receive the requested transfers; however, he did receive a promotion in December of 1998. (R.R. at 11a–12a, 17a, 19a–23a, 30a–31a, 90a–92a.)

**7.** When an unfair labor practice charge alleges a refusal to comply with a grievance arbitration award, the PLRB must determine whether an arbitration award exists, whether the appeal process has been exhausted, and, if so, whether the employer failed to comply

with the award. *Pennsylvania Labor Relations Board v. Commonwealth*, 478 Pa. 582, 387 A.2d 475 (1978). The PLRB examines evidence to determine whether the employer failed to comply with the grievance arbitration award, but it does not review the merits of the award. *Id.* Because there is no dispute here that the award exists and that the City failed to appeal that award, the only question before the PLRB was whether the City failed to comply with the award.

The PLRB understood this limitation on its authority. As noted by the PLRB, expungement erases the record of the accused in its entirety, including the facts leading up to the discipline; thus, once the award was issued, *and no appeal was filed*, questions regarding whether the expungement remedy was appropriate under the circumstances were not matters the PLRB could consider in enforcing the award.

ther the PLRB nor a reviewing court can act as a super-arbitrator and impose a remedy or conditions on an award in order to forge an award it considers to be more just and proper under the circumstances. *See McCandless Police Officers Association v. Town of McCandless,* 30 Pa. Pub. Employee R. ¶ 30141 (1999).

In a related argument, the City also contends that the PLRB erred in finding that the City committed an unfair labor practice because the Arbitrator's award was too ambiguous to support a finding of noncompliance. If the language of an arbitrator's award is ambiguous so that the PLRB is not able to state with any assurance that the award has not been complied with, a charge alleging noncompliance must be dismissed. *Joint Bargaining Committee of the Pennsylvania Employment Security Employees Association and Pennsylvania Social Services Union, Locals 675 and 678, SEIU v. Pennsylvania Department of Labor and Industry,* 17 Pa.Pub. Employee R. ¶ 17177 (1986). According to the City, the Arbitrator's award here contains substantial ambiguity because, although it orders that Officer De-Noble's "record" should be expunged and cleared to the fullest extent, it does not specify *which* record—the personnel record or the IAD record. The City views the award as not including expungement of the IAD record because that record allegedly was never considered during the arbitration proceeding. I cannot agree with the City's reasoning.

Far from being ambiguous, the arbitration award states in broad terms that Officer DeNoble's record is to be expunged to the fullest extent, clearly evidencing the Arbitrator's intention that the City maintain *no record* of the incident or the discipline that followed from the incident. As stated previously, the Arbitrator did not distinguish between those records included in Officer DeNoble's personnel file and those maintained in the IAD file. Moreover, the City sought no such distinction in an appeal to the Arbitrator or to the court to reverse, clarify or modify the arbitration award; instead, the City attempts to nullify a part of the Arbitrator's award in its defense to the unfair labor practice charge. The City's insistence that we ignore the clear and unambiguous language in the four corners of the award to discern the Arbitrator's alleged intent, consistent, of course, with the City's view of the award, would require us to replace the Arbitrator's clear directive with one party's interpretation of the award. Because this is not permitted, I do not believe the PLRB erred by concluding that the City failed to comply with the arbitration award when it continued to maintain Officer DeNoble's IAD record.

Accordingly, I would affirm.

President Judge DOYLE joins this dissent.