# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh, : 
　　　　　　　　　Petitioner : 
　　　　　　　　　 : 
　　　v. : No. 1233 C.D. 2024
　　　　　　　　　 : Submitted: July 7, 2025
Pennsylvania Labor Relations Board, : 
　　　　　　　　　Respondent : 


BEFORE:　HONORABLE RENÉE COHN JUBELIRER, President Judge
　　　　　　　HONORABLE MATTHEW S. WOLF, Judge
　　　　　　　HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER　　　　FILED: September 3, 2025

　　　The City of Pittsburgh (City) petitions for review of the August 20, 2024 Final Order of the Pennsylvania Labor Relations Board (Board), which dismissed the City's exceptions to the Hearing Examiner's Proposed Decision and Order (Proposed Decision). The sole issue before this Court is whether the Fraternal Order of Police, Fort Pitt Lodge No. 1 (Union) filed a timely unfair labor practice charge with the Board under Section 9(e) of the Pennsylvania Labor Relations Act (PLRA), Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. § 211.9(e).[1] Because we conclude that the Union's charge was timely filed, we affirm.

## I. BACKGROUND

　　　The City and the Union were parties to a collective bargaining agreement (CBA), effective January 1, 2019, to December 31, 2022, setting forth wages, hours

---

[1] Section 9(e) of the PLRA provides, in pertinent part: "No petition or charge shall be entertained which relates to acts which occurred or statements which were made **more than six weeks prior to the filing of the petition or charge.**" 43 P.S. § 211.9(e) (emphasis added).

of work, and other terms and conditions of employment for City police officers in the collective bargaining unit. On April 19, 2021, the Union filed a grievance against the City, alleging that the City violated the CBA's retiree health insurance provisions by unilaterally terminating health care benefits to the surviving spouses of retired police officers.

The matter proceeded to grievance arbitration. On March 15, 2022, after an evidentiary hearing, Arbitrator Christopher Miles issued an award (Miles Award) sustaining the Union's grievance and concluding as follows:

> Based upon the particular circumstances presented in this case, it is found that **the City violated the clear and unambiguous provisions of Section 14 of the [CBA] when it discontinued healthcare coverage for the surviving spouse upon the death of the retiree. Section 14 [of the CBA] requires the City to contribute towards the continued medical insurance coverage for a Police Officer retiree <u>and</u> his/her spouse. As the remedy for this violation, the City is directed to make restitution to the adversely affected survivors who are not otherwise excluded from coverage.**

(Reproduced Record (R.R.) at 419a (underlining in original; bold added); *see id.* at 386a.)

On April 18, 2022, the City filed an appeal with the Court of Common Pleas of Allegheny County (trial court). On August 30, 2022, the trial court denied the City's statutory appeal, denied the Union's motion to dismiss the appeal as untimely, and ordered that the Miles Award "shall remain in full force and effect." (*Id.* at 327a.)[2]

On September 29, 2022, the City filed an appeal with this Court, as well as an Emergency Application for Stay in the trial court. The trial court denied the

---

[2] *See City of Scranton v. Pa. Lab. Rels. Bd.*, 50 A.3d 774, 781 n.8 (Pa. Cmwlth. 2012) (noting that an arbitration award becomes enforceable only "after it is affirmed by a common pleas court").

Emergency Application for Stay on October 3, 2022, and directed the City to comply with both its August 30, 2022 Order and the Miles Award "during the pendency of any appeal therefrom." (*Id.* at 328a.)

While the City's appeal was pending in this Court,[3] a retired City police officer, Michael Mares, Sr., died on January 22, 2023. On January 23, 2023, the City informed Officer Mares' son that his mother's health care coverage would cease on January 31, 2023.

On March 1, 2023, the Union filed a charge of unfair labor practices with the Board, alleging that the City violated Section 6(1)(a) and (e) of the PLRA, 43 P.S. § 211.6(1)(a) and (e),[4] when it refused to provide continued health care coverage to Mrs. Mares following the death of her husband in contravention of the Miles Award.[5] A Board Hearing Examiner held an evidentiary hearing on July 21, 2023. Following the hearing, both parties filed post-hearing briefs, and the record was reopened to admit two Union exhibits.[6]

---

[3] On November 6, 2023, this Court affirmed the trial court's August 30, 2022 Order. *See City of Pittsburgh v. Fraternal Ord. of Police Fort Pitt Lodge No. 1*, 304 A.3d 816 (Pa. Cmwlth. 2023).

[4] Section 6(1)(a) of the PLRA states that "[i]t shall be an unfair labor practice for an employer . . . [t]o interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act." 43 P.S. § 211.6(1)(a). Section 6(1)(e) of the PLRA states that "[i]t shall be an unfair labor practice for an employer . . . [t]o refuse to bargain collectively with the representatives of [its] employes, subject to the provisions of [S]ection [7](a) of this act[, 43 P.S. § 211.7(a)]." 43 P.S. § 211.6(1)(e).

[5] On March 29, 2023, the City filed with this Court an Application for Stay of the trial court's August 30, 2022 Order, which was denied on June 7, 2023. On July 7, 2023, the City filed an Application for Stay of the trial court's August 30, 2022 Order with the Pennsylvania Supreme Court, which was denied on November 27, 2023.

[6] The first exhibit was this Court's November 6, 2023 Opinion and Order affirming the trial court's August 30, 2022 Order. The second exhibit was the Supreme Court's November 27, 2023 Order denying the City's Application for Stay.

On January 4, 2024, the Hearing Examiner issued his Proposed Decision, concluding that the City's refusal to comply with the Miles Award was a violation of its obligation to bargain in good faith pursuant to Section 6(1)(a) and (e) of the PLRA. (R.R. at 13a.) Relevant to this appeal, the Hearing Examiner also determined, based on the evidence of record, that the Union's charge was timely filed. The Hearing Examiner explained that the essence of the City's position was "that since [it has] never been in compliance with the Miles Award, which included restitution of costs to surviving spouses whose health[ ]care the City canceled, the Union should have filed [its charge] within six weeks of the [trial court's] decision because [the] City was immediately not complying with the Award." (*Id.* at 12a.) The Hearing Examiner, however, rejected this claim, concluding:

> The record contains the undisputed and stipulated facts that on January 23, 2023, Michael Mares, Jr., contacted the City regarding continued health[ ]care coverage for his mother, the widow of Michael Mares, Sr. [Michael] Mares, Jr., was told by the City that health[ ]care for his mother would cease on January 31, 2023. The [Union's] charge was filed on March 1, 2023. March 1[, 2023,] is within six weeks of January 23[, 2023]. These facts were included in Joint Exhibit 1 which the City agreed to include in[] the record.
>
> . . . I infer that **the Union had knowledge that the City was not complying with the Miles Award on January 23, 2023, when the City told Michael Mares, Jr., that his mother's health[ ]care coverage would be canceled on January 31, 2023. The City would like me to infer that the Union had knowledge that the City was not complying with the Miles Award before January 23, 2023. I do not have sufficient evidence in this matter to support such an inference.** I infer [] that the City would not necessarily have notified the Union if it made restitution to surviving spouses pursuant to the Miles Award. During the arbitration hearing before Arbitrator Miles, the City's witness, Jamie Warnock, testified that the City does not notify the Union when the City cancels a surviving spouse's medical benefits. There is thus a history of the City not notifying the Union with respect to City transactions with surviving spouses. Therefore, the lack of

4

notice of the payments to surviving spouses after the [trial court's] order would not necessarily put the Union on notice that the City was refusing to comply. **I will not find here, where the Union lacks a direct connection to beneficiaries of the Miles Award (i.e., the surviving spouses are not active Union members), that the Union has an affirmative duty to monitor compliance with arbitration awards sufficient to infer notice to the Union triggered by the City's failure to immediately make restitution to surviving spouses.**

(*Id.* (emphasis added).)

On January 24, 2024, the City filed exceptions to the Proposed Decision, asserting that the Hearing Examiner lacked jurisdiction over this matter because the Union's charge was untimely filed. Before the Hearing Examiner, the City asserted that "the Union was on notice that the City was refusing to pay any claim pursuant to the [Miles] Award as soon as [the City] filed [its] Statutory Appeal" and "the Union, as a party in the City's on[]going litigation, had notice of the City's persistent attempts to obtain a stay of the [Miles] Award both prior to and after retired [O]fficer Mares' death." (Certified Record (C.R.) at 266, 268.) The City did not challenge the Hearing Examiner's conclusions that the Miles Award was final and binding or that the City failed to comply with the Miles Award by discontinuing Mrs. Mares' health care coverage.

On August 20, 2024, the Board issued its Final Order, dismissing the City's exceptions and declaring the Proposed Decision "absolute and final." (R.R. at 19a.) The Board found that "the unfair labor practice alleged in the Union's [c]harge was the City's repudiation of the Miles Award on January 23, 2023, when the City informed the surviving spouse of Officer Mares that her health[ ]care benefits would cease effective at the end of the month." (*Id.* at 18a.) The Board specifically rejected the City's claim that the Union was "required to file its [c]harge when the

Miles Award was affirmed by the [trial court] or when the City filed its appeal of th[at] decision." (*Id.*)[7]  The Board concluded:

> At the heart of the City's exceptions is its claim that the inferences made by the Hearing Examiner as to when the Union knew or should have known that the City was not complying with the Miles Award were not reasonable.  However, **the City does not point to any actual fact of record to support this claim.**  Rather, the City points only to its own repeated attempts to obtain a stay of the Award as "evidence" that the Union should have been on notice that the City was not complying with the Award.  **Not only has the City failed to cite to any legal authority that appellate litigation of an arbitration award, without more, amounts to the type of legal notice required by Section 9(e) of the PLRA, it has failed to present any compelling reasons to overturn the Hearing Examiner's credibility determinations and inferences.  Therefore, the Hearing Examiner properly found that the Union's Charge was timely**, and the City's exceptions concerning timeliness are dismissed.

> After a thorough review of the exceptions, the briefs of the parties, and all matters of record, the Hearing Examiner properly concluded that the City violated Section 6(1)(a) and (e) of the PLRA, as read *in pari materia* with [the Policemen and Firemen Collective Bargaining Act, Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§ 217.1-217.12, commonly known as Act 111], when it refused to abide by the Miles Award, which directed it to continue to provide health[ ]care coverage to the surviving spouses of retired City police officers.

(*Id.* at 19a (internal citation omitted) (emphasis added).)

The City now petitions this Court for review.[8]

---

[7] In its decision, the Board noted: "The City does not challenge any of the Hearing Examiner's findings of fact in its exceptions.  Therefore, the Hearing Examiner's findings of fact are conclusive."  (R.R. at 17a.)

[8] "It is well settled that a decision of the [Board] must be upheld if the [Board's] findings are supported by substantial evidence and if its conclusions of law drawn from those facts are reasonable, not capricious, arbitrary[,] or illegal." *Fraternal Ord. of Police Haas Mem'l Lodge #7 v. Pa. Lab. Rels. Bd.*, 696 A.2d 873, 875 n.2 (Pa. Cmwlth. 1997).  "[W]here an unfair labor practice charge alleges a party's refusal to comply with a grievance arbitration award, the Board is not allowed to review the merits of the arbitration award." *City of Scranton*, 50 A.3d at 785.

**II. ANALYSIS**

Before this Court, the City asserts that the Union was required to file its unfair labor practice charge within six weeks of either August 30, 2022, when the trial court affirmed the Miles Award, or September 29, 2022, when the City filed its appeal with this Court. The City contends that based on these actions contesting the Miles Award, the Union knew or should have known that the City refused to comply with the Award, at the latest, by September 29, 2022. Because the Union did not file its charge until March 1, 2023, well beyond the six-week deadline, the City asserts that the Board lacked jurisdiction to entertain the charge. We disagree.

It is well established that an employer's refusal to comply with a binding grievance arbitration award constitutes an unfair labor practice in violation of the PLRA and Act 111. *See City of Philadelphia v. Pa. Lab. Rels. Bd.*, 772 A.2d 460, 462-63 (Pa. Cmwlth. 2001); *Pottstown Police Officers' Ass'n v. Pa. Lab. Rels. Bd.*, 634 A.2d 711, 713-14 (Pa. Cmwlth. 1993).[9] Section 9(e) of the PLRA provides that "[n]o petition or charge shall be entertained which **relates to acts which occurred or statements which were made more than six weeks prior to the filing of the petition or charge**." 43 P.S. § 211.9(e) (emphasis added). It is the nature of the unfair labor practice claim alleged that frames the limitations period for that cause of action. Our Court has held that "the [six-week] statute of limitations does not begin to run unless the complainant[] . . . knows or should have known of the **acts or circumstances giving rise to the harm and the cause of action**." *Dormont Borough v. Pa. Lab. Rels. Bd.*, 794 A.2d 402, 407 (Pa. Cmwlth. 2002) (emphasis

---

[9] "When an unfair labor practices charge asserts a refusal to comply with a grievance arbitration award, the Board must determine whether an arbitration award exists, whether the appeal process has been exhausted and, if so, whether the party has failed to comply with the award." *City of Philadelphia*, 772 A.2d at 463.

added); *see Fraternal Ord. of Police Haas Mem'l Lodge #7 v. Pa. Lab. Rels. Bd.*, 696 A.2d 873, 876 (Pa. Cmwlth. 1997). In other words, the triggering event for purposes of the PLRA's limitations period is an "act[] or circumstance[] giving rise to the harm and the cause of action." *Dormont Borough*, 794 A.2d at 407.

The question presently before this Court is: which act or circumstance constituted the City's refusal to comply with the Miles Award, thereby triggering the six-week statute of limitations for filing an unfair labor practice charge under the PLRA? The City asserts that the triggering event was its filing of an appeal from the trial court's order confirming the Miles Award on September 29, 2022. The Union asserts that the triggering event was the City's express denial of continued health care coverage to Mrs. Mares on January 23, 2023. We agree with the Union.

The City's position on appeal is that the Union should be charged with knowledge of the City's unfair labor practice based on the "undisputed reliable evidence of the [Union's] active participation in the appellate litigation maintained by the City to challenge the validity of the grievance." (City's Br. at 5; *see id.* at 6 (asserting that "[t]he [Union] actively participated as a party through its counsel throughout the appellate litigation").) Critically, however, the City cites no legal authority to support its contention, nor have we found any, that an employer's exercise of its appellate rights to challenge the validity of a grievance arbitration award, without more, constitutes an unfair labor practice under the PLRA. Were we to accept the City's position, any time an employer subject to a CBA elects to challenge the validity of an adverse arbitration award via the appeals process or to seek a stay of an award's enforcement could result in an unfair labor practice charge being filed against it for non-compliance with the award. We will not adopt such a sweeping argument in the absence of any supporting legal precedent.

8

By pursuing its appeal and requesting multiple stays of enforcement of the Miles Award, the City was, in its own words, "availing itself of every possible recourse to avoid compliance with the [Miles] Award." (C.R. at 268.) However, there is no record evidence establishing that, during that timeframe, the City had actually denied health care coverage to a retired officer's surviving spouse in violation of the Miles Award or that the Union knew of any such denial of coverage. In fact, on this particular issue, the Hearing Examiner found:

> During the arbitration hearing before Arbitrator Miles, the City's witness, Jamie Warnock, testified that the City does not notify the Union when the City cancels a surviving spouse's medical benefits. There is thus a history of the City not notifying the Union with respect to City transactions with surviving spouses. Therefore, **the lack of notice of the payments to surviving spouses after the [trial court's August 30, 2022 O]rder would not necessarily put the Union on notice that the City was refusing to comply. I will not find here, where the Union lacks a direct connection to beneficiaries of the Miles Award (i.e., the surviving spouses are not active Union members), that the Union has an affirmative duty to monitor compliance with arbitration awards sufficient to infer notice to the Union triggered by the City's failure to immediately make restitution to surviving spouses.**

(R.R. at 12a (emphasis added).) The Board likewise determined:

> At the heart of the City's exceptions is its claim that the inferences made by the Hearing Examiner as to when the Union knew or should have known that the City was not complying with the Miles Award were not reasonable. However, **the City does not point to any actual fact of record to support this claim.**

(*Id.* at 19a (emphasis added).) Contrary to the City's assertion, its use of the appellate process to avoid or delay compliance with the Miles Award does not equate to a violation of the Award's terms. *See Lancaster County v. Pa. Lab. Rels. Bd.*, 62 A.3d 469, 473 (Pa. Cmwlth. 2013) (holding that the statute of limitations for an

9

unfair labor practice claim based on a refusal to implement an interest arbitration award[10] "**does not start to run from an employer's statement of a future intent** to engage in conduct constituting an unfair labor practice") (emphasis added).

Importantly, the Union does not contest its knowledge of the City's appeal and stay requests, nor does it contest its active participation in that litigation. It merely argues, and we agree, that the City's pursuit of an appeal contesting the validity of the Miles Award and its filing of stay requests are not, here, in and of themselves, "acts or circumstances giving rise to the harm and the [unfair labor practice] cause of action." *Dormont Borough*, 794 A.2d at 407.

In this case, the unfair labor practice alleged by the Union was the City's refusal to comply with the Miles Award on January 23, 2023, when it informed the son of Mrs. Mares, the surviving spouse of a retired police officer, that her health care benefits would cease at the end of that month. It is undisputed that the Union learned of the City's non-compliance on that date. As the Hearing Examiner and the Board found, there is no record evidence establishing that, following the Miles Award and before January 23, 2023, the City expressly denied health care coverage to a retired officer's surviving spouse or that the Union knew of any such denial of coverage. (*See* R.R. at 12a, 19a.)

The Union was not required to file its charge within six weeks of the date the trial court affirmed the Miles Award or the date the City filed its appeal with this Court, as doing so would have been premature under the circumstances. Rather, the Union was required to file its charge within six weeks of discovering the alleged

---

[10] Our Court has explained that "[i]nterest arbitration concerns the 'inability of the parties to agree on terms of a collective bargaining agreement,'" whereas "[g]rievance arbitration involves the 'resolution by a third party of a dispute between public employer and public employee over the proper interpretation of an existing collective bargaining agreement.'" *Pottstown Police*, 634 A.2d at 713 n.4 (citations omitted).

10

unfair labor practice – that is, the City's express refusal to provide health care coverage to Mrs. Mares in contravention of the Miles Award on January 23, 2023. Therefore, we conclude that the Union's charge, filed on March 1, 2023, was timely.

### III. CONCLUSION

It is undisputed that the Union was informed on January 23, 2023, that the City refused to provide continued health care coverage to a retired police officer's surviving spouse in violation of the Miles Award. The Union timely filed its unfair labor practice charge within six weeks of that date pursuant to Section 9(e) of the PLRA. Accordingly, we affirm the Board's Final Order.

_____
RENÉE COHN JUBELIRER, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh,           :
          Petitioner    :
                          :
        v.             :    No. 1233 C.D. 2024
                          :
Pennsylvania Labor Relations Board,  :
          Respondent   :

## **O R D E R**

**NOW**, September 3, 2025, the August 20, 2024 Final Order of the Pennsylvania Labor Relations Board is hereby **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge