IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh, :
                     Petitioner :
                               :
      v. : No. 1365 C.D. 2024
                               : Submitted: December 8, 2025
Pennsylvania Labor Relations Board, :
                   Respondent :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                           FILED: April 2, 2026

The City of Pittsburgh (the City) petitions for review of an Order by the Pennsylvania Labor Relations Board (the Board), entered on September 17, 2024. That Order dismissed the City's exceptions to a Proposed Decision and Order by a Hearing Examiner of the Board, dated February 1, 2024. The Proposed Decision and Order concluded that the City committed an unfair labor practice under the Pennsylvania Labor Relations Act[1] (PLRA) and the Policemen and Firemen Collective Bargaining Act[2] (Act 111) by failing to implement an arbitration award

---

[1] Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§ 211.1-211.15.
[2] Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§ 217.1-217.12, commonly known as Act 111.

that directed reinstatement of Aaron Fetty (Fetty), a police officer whose employment the City terminated, and other relief including back pay. The City contends that substantial evidence does not support the Board's findings of fact and the Order should be reversed. After careful review, we affirm.

## I.    Background

Intervenor, the Fraternal Order of Police, Fort Pitt Lodge No. 1 (the Union), filed an unfair labor practice charge against the City (the Charge) alleging it failed to comply with the arbitration award in Fetty's favor. Reproduced Record (R.R.) at 91a. After a hearing, the Hearing Examiner issued his Proposed Decision and Order, setting forth facts including the following facts which the parties do not dispute:

1.    The City is a public employer and political subdivision under Act 111 as read *in pari materia* with the PLRA.

2.    The Union is a labor organization under Act 111 as read *in pari materia* with the PLRA. The Union is the exclusive bargaining unit representative of City of Pittsburgh police officers.

3.    The parties were subject to a collective bargaining agreement (CBA) with the effective dates of January 1, 2019, through December 31, 2022. The parties entered into a Tentative Agreement on March 7, 2023.

4.    On November 28, 2022, Arbitrator Ralph Colflesh issued an award (Colflesh Award or Award) over a dispute between the parties over the discipline of Police Officer Aaron Fetty. The Colflesh Award states in relevant part:

> In the instant case, an accusation was made against Officer Fetty of sexual "assault" on another City police officer on the evening of June 19, 2021. The City knew of the allegation on June 28, 2021, when its Office of Municipal Investigations ("OMI") received an anonymous complaint regarding Officer Fetty "engaged in an indecent sexual assault" in that he "groped" a co-worker. The City conducted an investigation as reported in a Disciplinary

2

Action Report known as DAR 21-099. On or about September 22, 2021, that investigation resulted in Officer Fetty's acceptance of a 3-day unpaid suspension, a forced transfer from the Police Zone in which he and his putative victim worked, and a five-year last chance agreement under which any further such incidents would result in his termination.

. . . .

On December 30, 2021, Officer Fetty's accuser filed an emergency motion for Sexual Violence Abuse Order ("SVPO") based on the same set of June 2021 allegations for which Officer Fetty was disciplined earlier in the year. Also on December 30, 2021, the accuser sent an email to all members of the City's Police Bureau, making the same charge of sexual assault against Officer Fetty. The following day the accuser's motion was granted on an interim basis by a Family Court Judge, and on March 23, 2022, after a plenary hearing, the same Judge issued a Final Order for Protection of Victims of Sexual Violence. The Judge found Officer Fetty committed "sexual violence" and characterized Officer Fetty's behavior "at minimum" as "sexual assault." On July 14, 2022, the City issued the instant DAR [22-059, which ultimately led to Fetty's termination and the Union's grievance] . . . .

AWARD

The FOP's grievance is granted. The City's termination of Officer Aaron Fetty based on disciplinary action taken in September 2022 was barred by the 120-day limit in the [CBA]. The City shall reinstate him to his pre-termination paygrade and duty **as soon as practical** and make him whole for all lost wages with an offset for any unemployment benefits or wages from other work performed at the same time he would otherwise have worked for the City while separated, and for all lost City benefits, and seniority. Further, his termination shall not be considered in any future decisions concerning any aspect of employment with the City. . . .

3

5. On December 29, 2022, the City filed an appeal of the Colflesh Award in the Court of Common Pleas of Allegheny County.

6. On April 20, 2023, . . . the Allegheny County Court of Common Pleas issued an order affirming the Colflesh Award.

7. On May 19, 2023, the City filed an appeal of the Court of Common Pleas decision to the Commonwealth Court.[3]

. . . .

9. The City did not file a motion for a stay of the Colflesh Award.

10. As of the date of the hearing, the City had not returned Fetty to work in any capacity.

R.R. at 91a-93a (internal citations to hearing exhibits omitted).

As a result of the City's failure to implement the relief, including reinstating Fetty, the Union filed the Charge. In its defense the City argued it was not "practical" to return Fetty to employment with the Bureau of Police (the Bureau) because doing so would adversely affect other police officers and the work of the Bureau. R.R. at 94a-95a, 111a-12a. The City asserted that its refusal to reinstate Fetty therefore complied with the Colflesh Award because that Award only required reinstatement "as soon as practical," and, the City argued, did not impose any specific deadline. *Id.* at 95a. The Award was, the City argued, at least ambiguous as to whether "as soon as practical" meant as quickly as the actions directed by the

---

[3] This Court affirmed the decision of the Allegheny County Common Pleas Court. *City of Pittsburgh, Pa. v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, No. 535 C.D. 2023, 316 A.3d 656 (Table) (Pa. Cmwlth., March 6, 2024). The City then filed a Petition for Allowance of Appeal in the Pennsylvania Supreme Court asserting that the arbitrators exceeded their authority by issuing an award contrary to public policy. This Court had rejected that argument based on controlling authority from the Supreme Court. *Id.* at *5 (citing *Pa. State Police v. Pa. State Troopers Ass'n (Smith)*, 741 A.2d 1248 (Pa. 1999)). The City's Petition for Allowance of Appeal is being held by the Supreme Court pending its resolution of that public policy issue in another case. *See City of Pittsburgh, Pa. v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, No. 118 WAL 2024 (Pa., filed September 24, 2024).

arbitrators could be done, or whenever the City determined that doing so was "practical," based on the impact on the Bureau and its officers. *Id.* at 95a-96a.

The Hearing Examiner rejected the City's argument, stating that "I do not agree with the City that the Award is ambiguous." R.R. at 96a. He explained that "the [Colflesh] Award does not say 'when the City determines it to be practical' and I find such interpretations to be unreasonable." *Id.* The Hearing Officer concluded that the use of the word "soon" meant the arbitrators intended "that Fetty shall be returned to work as quickly as possible. The City's interpretation that it has indefinite discretion is a complete misreading of the Award." *Id.* at 97a.

The Hearing Examiner further stated:

> The important facts on this issue are that the City put Fetty back to work in Zone One[4] in September 2021, and he worked there until September 2022. The record shows that he worked in Zone One without any issue. Fetty worked in Zone One after December 30, 2021, when Fetty's accuser filed an emergency motion for Sexual Violence Abuse Order based on the same set of June 2021 allegations for which Officer Fetty was disciplined earlier in the year. He worked in Zone One after the Family Court issued a temporary restraining order on December 31, 2021. And he worked in Zone One after the Family Court issued a Final Order for Protection of Victims of Sexual Violence on March 23, 2022, against Fetty. Other than the general concerns of Vinansky [a Police Commander and Fetty's former supervisor] and Kubiak [the City Solicitor], there is no evidence of record that shows that any of these incidents made it impractical for Fetty to work in Zone One. Indeed, Vinansky testified that there were no complaints about Fetty when he worked in Zone One for approximately one year until he was terminated in September 2022. The record shows that it is practical for Fetty to work in Zone One.

*Id.* at 96a. The Hearing Examiner added that "[i]t is clearly practical, possible, viable, workable, and feasible to return him [Fetty] to work since he already worked

---

4 Fetty and his accuser worked in Zone Five before the incident that led to Fetty's discipline. A requirement of Fetty's five-year, last-chance agreement was his transfer to a work location away from his accuser, in this case to Zone One. R.R. at 93a.

5

without issue for substantial periods of time in the same conditions the City now claims are impractical." *Id.* at 97a.

The Hearing Examiner ruled that the City's failure to reinstate Fetty and implement the other relief in the Colflesh Award constituted an unfair labor practice and ordered the City to reinstate Fetty and provide the other relief immediately. *Id.* at 98a.

The City filed timely exceptions with the Board, again arguing that the language "as soon as practical" was ambiguous and that the City's interpretation, allowing it to defer reinstatement and other relief based on its judgment about the adverse effect of reinstatement on the Bureau, was reasonable. The Board also rejected this argument:

> Here, it is clear from the language of the award that the arbitrator intended Officer Fetty to be made whole in all regards, including being put back on duty. Indeed, there is nothing in the language of the award to indicate that the City has the discretion to delay the reinstatement of Officer Fetty until they determine if, and when, it is "practical" to do so. The arbitrator's choice of the word "practical" after the phrase "as soon as," does not alter the clear intent of the arbitrator in entering the award, *i.e.*, to return Officer Fetty to his pre-termination status without delay.
>
> To be sure, in the Award, Arbitrator Colflesh noted that Officer Fetty worked in Zone 1, away from the accuser, for approximately one year after the incident, without any complaints or problems under a last chance agreement. Despite that intervening year, Officer Fetty was terminated a year later for the same offense for which he received the 3-day suspension, transfer to Zone 1, and issued a 5-year last chance agreement. Clearly, it is reasonably construed that the arbitrator's intent in the Colflesh Award to remedy the unjust termination a year later, is to immediately return Officer Fetty to the same position he had been working for one year without incident in Zone 1 under the last chance agreement.

*Id.* at 47a.

The Board determined that "the Hearing Examiner properly concluded that the City violated . . . the PLRA, as read *in pari materia* with Act 111, when it refused to abide by the Colflesh Award, which directed it to return Officer Fetty to duty and otherwise make him whole for all lost wages and benefits." *Id.* The Board dismissed the City's exceptions and made the Proposed Decision and Order "absolute and final." *Id.* at 48a.

## II.    Issues

The City's brief presents a single question: whether the Board's "finding, inferences, and conclusions [were] drawn from the facts of record and supported by substantial evidence." City Br. at 6. In arguing that question the City reiterates its contention that the Colflesh Award is ambiguous, and that the words "as soon as practical" reasonably could be read to give the City discretion to determine that it is not "practical" to reinstate Fetty because doing so would adversely affect other police officers and the work of the Bureau. *Id.* at 19-20.

The City contends that the Board's interpretation of the phrase "as soon as practical" was based on its finding that "in the Award, Arbitrator Colflesh noted that Officer Fetty worked in Zone One, away from the accuser, for approximately one year after the incident, without any complaints or problems under a last chance agreement." City Br. at 21 (citing R.R. at 47a). The City argues that substantial evidence does not support this finding because the Colflesh Award "does not make any mention, whatsoever, about whether any complaints were filed against [Officer] Fetty while he worked in Zone One. Stated differently, the language . . . the Board relies upon does not exist." City Br. at 21 (citation omitted). The City further argues that no other evidence of record supports the Board's finding that Fetty worked in Zone One for approximately one year without any incidents. *Id.* at 22.

7

### III. Analysis

We have jurisdiction to review the Board's Order under 42 Pa.C.S. § 763.

We review the Board's final orders to determine whether substantial evidence supports the Board's necessary findings of fact and whether the Board violated the parties' constitutional rights or erred as a matter of law. *Schuylkill Cnty. v. Pa. Lab. Rels. Bd.*, 197 A.3d 1256, 1260 n.6 (Pa. Cmwlth. 2018) (citation omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chester Upland Sch. Dist. v. Pa. Lab. Rels. Bd.*, 150 A.3d 143, 149 n.2 (Pa. Cmwlth. 2016) (citation omitted). The Board's factual determinations are conclusive if supported by substantial evidence. *Commonwealth v. Pa. Lab. Rels. Bd.*, 463 A.2d 409, 411 (Pa. 1983).

With respect to questions of law our scope of review is plenary and the standard of review is *de novo*. *Schuylkill County*, 197 A.3d at 1260 n.6. "In other words, we do not defer to the . . . [Board's] conclusions of law, and we reassess the record with a fresh pair of eyes." *Allegheny Cnty. Dep't of Health v. Wilkerson,* 329 A.3d 111, 117 (Pa. Cmwlth. 2024).

The complainant in an unfair labor practice charge asserting failure to comply with a grievance arbitration award bears the burden of proving that (1) the award exists; (2) the appeal process has been exhausted; and (3) the employer failed to comply with the award. *State Sys. of Higher Ed. v. Pa. Lab. Rels. Bd.,* 528 A.2d 278, 281 (Pa. Cmwlth. 1987). The arbitration award becomes final and binding when the appeal process is complete. *City of Scranton v. Pa. Lab. Rels. Bd.*, 50 A.3d 774, 783 (Pa. Cmwlth. 2012). In determining whether the employer complied the Board "must ascertain the arbitrator's intent." *See City of Phila. v. Pa. Lab. Rels.*

*Bd.*, 772 A.2d 460, 463 (Pa. Cmwlth. 2001), app. granted, 784 A.2d 120 (Table) (Pa. 2001), app. discontinued, No. 32 EAP 2001 (Pa., filed May 15, 2002).

The City does not dispute that the Colflesh Award exists, that the appeal process has been exhausted, or that the Award is final and binding. Instead it argues that the complainant did not establish that the City failed to comply, because the term "as soon as practical" is ambiguous and reasonably could be read to give the City discretion to defer the reinstatement and other relief. City Br. at 19-20.

The City contends that the Board's interpretation of that language as having only a temporal meaning is based on a finding that the Colflesh Award found that Fetty worked for a year after his original suspension without any additional complaints or problems. Pointing to the absence of any specific language to that effect in the Award, the City contends that no substantial evidence supports the finding and therefore the Board's interpretation is a conclusion not "drawn from the facts of record." City Br. at 20-21 (citing *St. Joseph's Hosp. v. Pa. Lab. Rels. Bd.*, 373 A.2d 1069 (Pa. Super. 1976)). Furthermore, the City argues, no substantial evidence in the record before the Board supports such a finding. City Br. at 22-23.

The City's argument fails because the Hearing Examiner and the Board properly concluded that the language "as soon as practical" is unambiguous and required prompt implementation of the relief in the Colflesh Award. R.R. at 47a, 96a. That reading does not depend on whether the Award contained a finding that Fetty worked after his initial suspension without additional complaints or problems, or whether the Board could find that fact based on the record.

The City acknowledges the Board's authority to interpret the meaning of an arbitration award in the context of an unfair labor practice charge alleging failure to comply. City Br. at 20. *See City of Philadelphia,* 772 A.2d at 463. Both the Hearing

Examiner and Board rejected the City's contention that the language "as soon as practical" is ambiguous or reasonably could be read to give the City the discretion it claims. R.R. at 47a, 86a.

The City also acknowledges that ambiguity requires more than one reasonable interpretation of the award. City Br. at 20 (citing *Mut. Fire, Marine & Inland Ins. Co. v. Norad Reins. Co.,* 868 F.2d 52 (3d Cir. 1989)). But the City cites no authority supporting its ambiguity argument. It purports to rely upon *Hughes v. City of Bethlehem*, No. 05-5444, 2007 WL 7563735 (E.D. Pa., March 27, 2007), but that decision interprets the term "as soon as practicable" in relation to notice given by an employee under the federal Family and Medical Leave Act (FMLA), a question not presented here. And nothing in that decision suggests that this similar term in the FMLA would give an employee entitled to family or medical leave the discretion to determine when to give the required notice, as opposed to obligating the employee to do so as soon as she was able.

The Board concluded that the Colflesh Award is unambiguous and required prompt reinstatement of Fetty and implementation of the other relief the arbitrators granted, and that the City failed to comply with the Award. Whether an arbitration award is ambiguous is a question of law determined by the Court. *Chirico v. Bd. Of Supervisors*, 439 A.2d 1281, 1284 n.6 (Pa. Cmwlth. 1981), aff'd in relevant part, rev'd in part on other grounds, 470 A.2d 470 (Pa. 1983). We agree with the Board that the Colflesh Award is not ambiguous; that it required prompt reinstatement and other relief for Fetty; and that the City's reading of the language "as soon as practical," as granting the City discretion to defer that relief indefinitely, is unreasonable. The City's reading is contrary to the clear temporal meaning of the words "as soon as," and its interpretation of the word "practical" is inconsistent with

10

the ordinary meaning of that word. The City's reading also renders the grant of relief in the Award illusory.

Further, even if the validity of the Board's interpretation of the Award depended on a finding that Fetty worked for a year after his initial suspension without additional complaints or problems, as the City asserts here, *see* City Br. at 21-22, the City's argument still would fail, because substantial evidence supports that finding.

Commander Vinansky, a senior officer who supervised Fetty at the time of the incident, R.R. at 113a (N.T. 43:18-25), and who assessed the effect of that incident on the Bureau and its other officers, *id.* at 115a-16a (N.T. 52:1-56:15), testified that he (Vinansky) did not hear about any additional complaints or problems while Fetty worked in Zone One after his original suspension, *id.* at 117a (N.T. 60:15-61:11). It is reasonable to infer that a senior officer in that position would be aware of any additional complaints or problems. Also, the City certainly would have been aware of additional complaints or problems, but it presented no evidence of any to the Board; its brief refers only to expressions of concern by other officers and employees about the original complaint that led to Fetty's suspension. *See* City Br. at 22-23. Finally, it was undisputed that Fetty worked after the original suspension under a "last chance" agreement that permitted termination if there were any additional similar incidents. R.R. at 117a (N.T. 59:11-16), 142a. The City presented no evidence of additional incidents to the Board, and presumably if they existed Fetty would have been terminated under the "last chance" agreement.

All of this, taken together, is evidence that a "reasonable mind might accept as adequate to support . . . [the] conclusion" that Fetty worked after his original suspension without any additional complaints or problems. *Chester Upland School*

11

*District,* 150 A.3d at 149 n.2. It is the function of the Board, not this Court, to resolve conflicts in the evidence, assess the credibility of witnesses, and draw the inferences necessary to resolve the matter. *State Sys. of Higher Ed. v. Pa. Lab. Rels. Bd.*, 757 A.2d 442, 446-47 (Pa. Cmwlth. 2000).

## IV.    Conclusion

We do not condone the underlying conduct on which this termination of employment was based. But the Board correctly determined that the Colflesh Award was not ambiguous and required immediate reinstatement and other relief, and therefore properly concluded that the City's failure to implement that relief was an unfair labor practice. And the Board's findings of fact, to the extent relevant to resolution of the Charge, are supported by substantial evidence. Accordingly, we affirm.

_____<br>
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh, : 
              Petitioner : 
                : 
      v. : No. 1365 C.D. 2024
                : 
Pennsylvania Labor Relations Board, : 
          Respondent : 

# **O R D E R**

**AND NOW**, this 2nd day of April 2026, the September 17, 2024 Order of the Pennsylvania Labor Relations Board is **AFFIRMED**.

_____
STACY WALLACE, Judge